[No. 29787-0-III. Division Three. September 18, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. GABRIELA YASERTH BARRON, *Appellant*.

744

*David L. Donnan* and *Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*James P. Hagarty, Prosecuting Attorney*, and *David B. Trefry, Deputy*, for respondent.

¶1 SWEENEY, J. — A strip search requires probable cause to believe that evidence of a crime will be discovered, and it requires approval of a police supervisor. Here, the search was supported only by the defendant's apparent nervousness. That is not enough. We reverse the conviction for possession of a controlled substance with intent to deliver.

## FACTS

¶2 Officer Thomas Orth of the Sunnyside Police Department responded to a report of an assault with a knife on September 6, 2010. He arrived at the scene and found Gabriela Barron and three others standing in the front yard of a house. Ms. Barron was crying hysterically, and her knee was bleeding. She told Officer Orth that Melinda Garcia had chased her out of Ms. Garcia's nearby house at knife point following a dispute over the supposed theft of $100 and that she injured her knee in the process.

¶3 Officer Orth asked Ms. Barron if she would sit in the backseat of his patrol car while he and another officer investigated. He explained that she was not under arrest at that time. Ms. Barron got in the back of the patrol car. Officer Orth took her purse and placed it in the secured front seat area of the car. Ms. Barron remained locked in the back of the patrol car for about 20 minutes.

¶4 Officer Orth spoke with Ms. Garcia and her roommate, Katie Everham. The two women confirmed that there

had been a physical altercation inside Ms. Garcia's house over the missing money and that Ms. Barron was eventually chased out of the house. Ms. Garcia and Ms. Everham both denied the use of a knife. The investigating officers did not locate a knife or the money alleged to be stolen.

¶5 Officer Orth returned to his patrol car and arrested Ms. Barron for disorderly conduct. He then searched Ms. Barron's purse, the purse he had placed in the front seat, and found two glass pipes with apparent drug residue and some unused "baggies." Officer Orth took Ms. Barron to the Sunnyside Police Station to be booked.

¶6 Once at the station, Officer Orth instructed Dispatch Officer Mary Evialon to conduct a strip search of Ms. Barron for concealed narcotics. He was concerned by the number of unused baggies found in Ms. Barron's purse and the fact that she was acting nervous and answering questions quickly. Officers Orth and Evialon did not seek a warrant or permission from a supervisor before they started to search Ms. Barron.

¶7 Officer Evialon took Ms. Barron to a changing room and explained the strip search procedure to her. She clarified that she would not "go hands on unless need be." Report of Proceedings (Dec. 14, 2010) (RP) at 43. Ms. Barron began crying and stated that she wanted to come clean and had something concealed. Officer Evialon told Ms. Barron to start removing her clothes. Ms. Barron took off her pants and then repeatedly asked to use the restroom while grabbing her genitalia. Officer Evialon told her she could do so after she was changed but that the toilet would be inspected prior to flushing. Ms. Barron then pulled her underwear down and removed an envelope from her vagina. The envelope contained a $20 bill and pieces of aluminum foil containing six-tenths of a gram of methamphetamine.

¶8 Ms. Barron moved to suppress the various pieces of evidence on four separate grounds: (1) the initial detention in the back of the patrol car lacked any reasonable suspicion or lawful basis; (2) the arrest for disorderly conduct violated the

officer presence rule, which requires that a warrantless arrest occur in the presence of an officer; (3) the search of the purse fell outside of the search incident to arrest exception because it occurred after Ms. Barron was secured and there were no exigent circumstances; and (4) the strip search violated Washington law because it was conducted without a warrant or authorization from a supervisor.

¶9 The court ruled that Ms. Barron voluntarily entered the patrol car and that exigent circumstances surrounding the knife incident supported the officer's request. The court also ruled that the arrest for disorderly conduct outside of the officer's presence fell within the physical threat of harm exception to the officer presence rule. The court then ruled that the officer unlawfully searched Ms. Barron's purse and suppressed that drug evidence. However, the trial court justified the strip search based on Officer Orth's concern that Ms. Barron acted nervous following her arrest for disorderly conduct and the court refused to suppress the evidence discovered in that search.

¶10 The court found Ms. Barron guilty of possession of a controlled substance with intent to deliver following a stipulated trial. She appeals. The State does not appeal the court's suppression of the drug evidence discovered in her purse.

## DISCUSSION

DETENTION IN THE PATROL CAR A LAWFUL SEIZURE

¶11 Ms. Barron contends the court erred by refusing to suppress all of the evidence obtained following her unlawful seizure in the patrol car. We review the denial of a suppression motion to determine whether substantial evidence supports the trial court's findings and whether those findings support the conclusions. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We review a trial court's conclusions of law de novo. *State v. Eisfeldt*, 163 Wn.2d 628,

634, 185 P.3d 580 (2008). We also review de novo whether police conduct amounted to a seizure. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

■■ ¶12 All police seizures of a person, including brief detentions, must be tested against the Fourth Amendment guaranty of freedom from unreasonable searches and seizures. U.S. CONST. amend. IV; *Mapp v. Ohio*, 367 U.S. 643, 648, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). A warrantless seizure is considered per se unreasonable unless it falls within one of the few exceptions to the warrant requirement. *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). We start by determining whether a seizure actually occurred and, if it did, then whether it falls within an exception. *State v. O'Neill*, 148 Wn.2d 564, 574, 62 P.3d 489 (2003).

■ ■ ¶13 A citizen is seized when her freedom of movement is restrained and she would not believe that she is free to leave or decline an officer's request to do something. *Id.* The test is objective. *State v. Young*, 135 Wn.2d 498, 501, 957 P.2d 681 (1998). Here, Officer Orth arrived at the scene of a reported assault with a knife. He spoke with Ms. Barron; she was crying hysterically, and her knee was bleeding. Officer Orth then requested that Ms. Barron sit in the back of his patrol car while he investigated further. She complied and relinquished her purse. The officer put the purse in the front seat and locked Ms. Barron in the backseat of the patrol car. Objectively, these actions restrained Ms. Barron's freedom of movement; she was not free to leave. This is a warrantless seizure.

■ ¶14 An investigative stop/detention is an exception to the warrant requirement and is based upon less evidence than is needed for probable cause to make an arrest. *State v. Glover*, 116 Wn.2d 509, 513, 806 P.2d 760 (1991) (citing *Terry v. Ohio*, 392 U.S. 1, 25-26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). An investigative detention occurs when the police briefly seize a person for questioning based on

specific and articulable, objective facts that give rise to a reasonable suspicion that the person has been or is about to be involved in a crime. *State v. Dorey*, 145 Wn. App. 423, 429, 186 P.3d 363 (2008) (quoting *Terry*, 392 U.S. at 21).

¶15 Here, the trial court concluded that exigent circumstances supported the detention because Officer Orth did not know if Ms. Barron was a victim, witness, or perpetrator. Ms. Barron argues that Officer Orth had no information implicating her as the perpetrator following his initial investigation and, accordingly, had no authority to detain her. The State responds that Ms. Barron's claim that she was a victim of or witness to an assault involving a knife amounted to exigent circumstances.

¶16 Police may not stop potential witnesses to the same extent as suspects of a crime. *See id.* at 426. In *Dorey*, we considered whether police may stop and detain a potential witness when investigating a disturbance complaint where no exigent circumstances existed. *Id.* at 428. There, the responding officer asked a man at a nearby car wash for identification and information regarding the complaint. *Id.* at 426. After the man left, the officer checked for outstanding warrants and found some. *Id.* The officer went after the man and found him minutes later getting out of his car and tossing a fanny pack into the bushes. *Id.* at 426-27. The man was arrested on the warrants and charged with possession of the methamphetamine found in the fanny pack. *Id.* at 427. We concluded that the arrest was unlawful because the officer had no particular articulable suspicion of involvement in criminal activity. *Id.* at 435.

¶17 We quoted *State v. Carney*[1] for the proposition that " '[t]here is no authority—either statutory or otherwise— permitting an officer to seize a witness without a warrant, absent exigent circumstances or officer safety.' " *Id.* at 429 (quoting *Carney*, 142 Wn. App. at 203). Exigent circumstances

---

[1] 142 Wn. App. 197, 174 P.3d 142 (2007).

necessary for detaining a witness exist when (1) a serious crime recently occurred, (2) the officer reasonably believes that the witness's information will materially assist in the investigation, and (3) the detention is reasonably necessary for identification or investigation purposes. *Id.* at 430 (quoting *City of Kodiak v. Samaniego*, 83 P.3d 1077, 1083-84 (Alaska 2004)).

¶18 Here there were the necessary exigent circumstances. Officer Orth was summoned to investigate a disturbance that was anything but innocuous—an alleged assault with a deadly weapon. Officer Orth found Ms. Barron in the front yard of a neighbor's house, hysterical and wounded. She admitted that she had a fight involving a knife over an alleged theft. At that point, Officer Orth did not know if she was a victim or a perpetrator but he knew she was a witness. And Officer Orth reasonably believed that Ms. Barron's information would materially assist in his investigation. The brief detention in the back of the patrol car was lawful, and the court correctly refused to suppress the evidence on that ground.

ARREST FOR DISORDERLY CONDUCT

¶19 Ms. Barron next contends that the trial court erred by denying her motion to suppress because Officer Orth did not have probable cause to arrest her for disorderly conduct. Whether there is probable cause to arrest is a legal question that we review de novo. *State v. Grande*, 164 Wn.2d 135, 140, 187 P.3d 248 (2008).

¶20 Probable cause requires a showing that "the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed." *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986). The determination rests on "the totality of facts and circumstances within the officer's knowledge at the time of the arrest." *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979).

¶21 Ms. Barron argues that Officer Orth did not have probable cause to arrest because he did not witness the fight or even see her run outside the house. Police must personally witness the crime in order to make a warrantless arrest for most misdemeanor and gross misdemeanor offenses. RCW 10.31.100. But felony offenses and misdemeanors involving physical harm to a person or the unlawful taking of property have no such requirement. RCW 10.31.100(1). Officer Orth arrived at the scene and saw Ms. Barron and three others standing in the front yard of a neighbor's house. Ms. Barron was crying hysterically, and her knee was bleeding. She informed Officer Orth that Melinda Garcia had assaulted her with a knife over the alleged theft of $100. Ms. Garcia corroborated much of the story. These undisputed facts create more than a suspicion that Ms. Barron and Ms. Garcia fought and that $100 was stolen. Based on the totality of the circumstances, Officer Orth had probable cause to believe either crime had been committed. He decided, however, to charge both women with disorderly conduct for their actions inside and outside of the house.

¶22 Ms. Barron argues that the fight between her and Ms. Garcia could not be disorderly conduct under either the Sunnyside Municipal Code or state statute because it occurred inside a house, not in a public place. Sunnyside Municipal Code 9.60.010(A)(1) and (2) defines "disorderly conduct" as when a person "[f]ights, quarrels or encourages others to fight in any public place" or if a person "[b]y noisy, riotous or tumultuous conduct, disturbs the peace . . . of the City." RCW 9A.84.030(1)(a) and (b) defines "disorderly conduct" as when a person "[u]ses abusive language and . . . intentionally creates a risk of assault; [or] intentionally disrupts any lawful assembly or meeting or persons without lawful authority."

¶23 Both women admitted to Officer Orth that the fight started inside the house, and that Ms. Barron was chased outside and injured her knee. Ms. Barron's behavior

amounted to conduct that disturbed the peace. The arrest was lawful, and the court appropriately refused to suppress on that ground.

STRIP SEARCH

¶24 Finally, Ms. Barron contends the trial court erred in denying her motion to suppress because Officer Orth did not have probable cause to believe that a strip search was necessary to discover drugs. Again, we review written findings entered after a suppression hearing for substantial evidence and the court's conclusions of law de novo. *Hill*, 123 Wn.2d at 644; *Eisfeldt*, 163 Wn.2d at 634.

¶25 RCW 10.79.130 authorizes a warrantless strip search. RCW 10.79.130(1)(a) authorizes a strip search without a warrant if there is a reasonable suspicion that a strip search is necessary to discover weapons or drugs concealed on a person in custody that constitute a threat to the security of the facility. A reasonable suspicion has been described as a substantial possibility that criminal conduct has occurred or is about to occur. *State v. Harris*, 66 Wn. App. 636, 643, 833 P.2d 402 (1992).

¶26 RCW 10.79.130 provides in part:

(1) No person to whom this section is made applicable by RCW 10.79.120 may be strip searched without a warrant unless:

(a) There is a reasonable suspicion to believe that a strip search is necessary to discover weapons, criminal evidence, contraband, or other thing concealed on the body of the person to be searched, that constitutes a threat to the security of a holding, detention, or local correctional facility[.]

. . . .

(2) For the purposes of subsection (1) of this section, a reasonable suspicion is deemed to be present when the person to be searched has been arrested for:

(a) A violent offence as defined in RCW 9.94A.030 or any successor statute;

(b) An offense involving escape, burglary, or the use of a deadly weapon; or

(c) An offense involving possession of a drug or controlled substance under chapter 69.41, 69.50, or 69.52 RCW or any successor statute.

¶27 Division One of this court addressed the reasonable suspicion exception to a warrantless strip search in *State v. Audley*, 77 Wn. App. 897, 905-08, 894 P.2d 1359 (1995). In *Audley*, the defendant was arrested for possession of a controlled substance with intent to deliver, and the officer saw him reaching down the front of his pants to retrieve suspected cocaine. *Id.* at 908 n.11. The officer testified that the crotch area was a common place to hide drugs. *Id.* Division One held that a reasonable suspicion was clearly present based on the crime for which the defendant was arrested and his conduct prior to arrest. *Id.* at 908.

¶28 But the facts here are distinguishable. Ms. Barron was arrested for disorderly conduct—not an offense that could support a reasonable suspicion on its own. And the court ruled that the search of Ms. Barron's purse that followed her arrest was improper because it was held by Officer Orth in a separate location prior to arrest. The court suppressed that drug evidence. The court nonetheless concluded that Officer Orth had reasonable suspicion to order the jailhouse strip search based on Ms. Barron's nervousness:

21. Officer Orth transported the defendant to the Sunnyside jail. Based on what was in the purse, and upon her nervousness and appearance alone, Officer Orth requested a female to conduct a strip search of the defendant.

22. Dispatch Officer Mary Evialon, of the Sunnyside Police Department, took the defendant to the restroom for her to be strip searched pursuant to Sunnyside Police Department regulations and standards.

23. Officer Orth testified that no supervisor was requested to approve or advised as to the strip search of Ms. Barron.

24. No warrant for the strip search or the search of the purse was obtained.

25. While the defendant was fully clothed, she repeatedly asked to use the restroom while touching her genitalia. Officer Evialon denied Ms. Barron's request to use the restroom.

26. Officer Evialon instructed the defendant on how to undress. Ms. Barron removed her socks, pants and then pulled her panties to the mid thigh area.

27. Officer Evialon did not touch the defendant at any time during the search.

28. The defendant repeatedly told Officer Evialon that she wanted Officer Orth to know about something.

29. Officer Evialon asked the defendant to remove what she was hiding.

30. The defendant removed a letter sized envelope from inside her vagina.

Clerk's Papers at 77-78 (Findings of Fact) 21-30. So the drug evidence from the purse had been suppressed and the arrest was for a nonviolent crime. Officer Orth could then have relied only on Ms. Barron's nervousness to support the strip search. That alone did not provide a substantial possibility that she was concealing drugs. *See Harris*, 66 Wn. App. at 643. We assume that many, if not most, people will react with a level of nervousness when they are arrested.

¶29 The State contends that Ms. Barron's actions in the changing room prior to the search provided the reasonable suspicion necessary for the full strip search. The court found that once in the room Ms. Barron repeatedly asked to use the restroom while grabbing her genitalia. The court also found that Officer Evialon instructed her to undress only after Ms. Barron started acting nervous. But Officer Evialon testified that she gave the strip search instructions before Ms. Barron's unusual behavior:

> [I] [w]ent into the dressing room with her. I told her what I was there for, told her I don't go hands on unless need be, that she needed to take all her clothes off to make sure that she

wasn't concealing anything. Before she even removed anything, any part of her clothing, she huddled in the corner and started crying, said that she wanted to come forth, come clean, that she had something concealed and she wanted me to make sure that I told Officer Orth that she came forward before I had to find it.

RP at 43.

¶30 Ms. Barron was taken to a private room, was threatened with a possible "hands on" strip search, and then broke down emotionally. This retroactive reasonable suspicion is not what the law contemplates. RCW 10.79.130. Ms. Barron's nervousness, standing alone, is not sufficient to support this strip search.

¶31 Ms. Barron also contends that the strip search was unlawful because police did not obtain prior approval from a supervisor as required by RCW 10.79.140(2).

¶32 RCW 10.79.140 provides in part:

(1) A person to whom this section is made applicable by RCW 10.79.120 who has not been arrested for an offense within one of the categories specified in RCW 10.79.130(2) may nevertheless be strip searched, but only upon an individualized determination of reasonable suspicion or probable cause as provided in this section.

(2) With the exception of those situations in which reasonable suspicion is deemed to be presented under RCW 10.79.130(2), *no strip search may be conducted without the specific prior written approval of the jail unit supervisor on duty*.

(Emphasis added.)

¶33 Ms. Barron was not arrested for the crimes set out in RCW 10.79.130(2), nor did her nervousness support a reasonable suspicion. Police must then have obtained written approval from the jail supervisor before ordering the warrantless strip search here. While at least one court has held that suppression is not the appropriate remedy for

violation of the writing requirement of RCW 10.79.140(2), that same court found a reasonable suspicion supported the search. *See Harris*, 66 Wn. App. at 644. We do not have that here. The evidence discovered during the unlawful search should have been suppressed.

¶34 We reverse the conviction.

KORSMO, C.J., and BROWN, J., concur.