# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46596-5-II |
| Respondent, | |
| v. | |
| BARON ADAM DUKES, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. − Baron Dukes appeals his convictions for resisting arrest and third degree assault. We hold that (1) the State presented sufficient evidence that the arrest Dukes resisted was lawful, and (2) the prosecutor did not commit misconduct by drawing adverse inferences from Dukes asking the officer whether he was being detained and attempting to leave. And we decline to address Dukes' challenge to the trial court's jury instruction defining reasonable doubt, because he did not object at trial. Accordingly, we affirm Dukes' convictions.

## FACTS

On April 28, 2014, Dukes was walking down the street in Vancouver with his girlfriend, Ona Minjarez. As they walked down the street, Dukes walked his bike along his side.

The couple stopped and began having an animated conversation. The loudness of the conversation drew the attention of Jesus Gonzalez, who was working 40 to 50 feet away and wearing earplugs. Gonzalez could not hear what they were saying, but he saw Dukes standing about ten inches from Minjarez and pointing his finger at her. He saw Dukes touch Minjarez on the shoulder to turn her towards him, but did not see any other contact.

The conversation also drew the attention of Detective Robert Givens, who happened to drive by in his police car. Givens saw the couple and thought they might be involved in some type of domestic disturbance. He saw Dukes standing in front of Minjarez and leaning in with his face about six inches from hers. Givens also observed that Dukes had a contorted face, appeared angry, and looked as if he was yelling. But Givens could not hear anything from inside his car.

Givens parked near the couple and approached them. Givens said hello and asked the couple if everything was okay. They both told him that they were fine. Givens then asked Minjarez to talk with him apart from Dukes and she agreed. Givens stated that in his experience, sometimes officers learn that everything is not fine when couples are separated.

Before Givens was able to ask Minjarez anything, Dukes asked Givens, "Am I being detained?" Report of Proceedings (RP) at 151. Givens told him that he was not under arrest, but he was not free to leave. Dukes asked the same question two more times and Givens repeated the same response. Dukes then tried to put his feet on his bike pedals and started to ride his bike. Dukes went about five feet before Givens grabbed Dukes from behind and pulled him off of the bike.

After Givens pulled Dukes off the bike, the two began to scuffle as Givens tried to get Dukes to sit down. Dukes asked if he was being detained and Givens told him he was under arrest for obstructing a police officer. Givens tried to handcuff Dukes, but Dukes pulled his hands away. Vancouver Police Officer Scott Smith arrived and saw Givens struggling with Dukes, who was twisting and kicking. Smith helped Givens try to gain control of Dukes in order to handcuff him. The two attempted to get both of Dukes' hands behind his back as Dukes pulled his hands away, kept his arm under his body, and then refused to bend his arms, but

eventually Smith and Givens were able to handcuff Dukes. As a result of the struggle to handcuff Dukes, Givens sustained scrapes to his hand, knee, and forearm.

The State charged Dukes with fourth degree assault of Minjarez, obstructing a police officer, resisting arrest, and third degree assault of Givens.

At trial, the trial court gave a reasonable doubt jury instruction that was identical to WPIC 4.01. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008) (WPIC). Dukes did not object to this instruction. During closing argument, the prosecutor commented on the fact that Dukes asked whether he was being detained and the fact that Dukes attempted to leave the area after Givens said he was not free to leave. Dukes did not object to these comments.

The jury found Dukes not guilty of fourth degree assault and obstructing a police officer, but guilty of resisting arrest and third degree assault of Givens. Dukes appeals his convictions.

ANALYSIS

A.  SUFFICIENCY OF THE EVIDENCE

Dukes argues that the State presented insufficient evidence to convict him of false arrest because the State failed to show that Dukes was resisting a *lawful* arrest. He argues that his arrest was unlawful because Givens lacked probable cause to arrest him for obstructing a law enforcement officer. We disagree.

1.  Standard of Review

When evaluating the sufficiency of evidence for a conviction, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). This court will assume the truth of the State's evidence and all

reasonable inferences drawn from that evidence when evaluating whether sufficient evidence exists. *Id.* at 106.

> 2. Lawful Arrest

A person is guilty of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from lawfully arresting him. RCW 9A.76.040. An arrest without a warrant is lawful if the officer had probable cause to believe that a person is committing or has committed a misdemeanor or gross misdemeanor in the presence of the officer. RCW 10.31.100[1]. "Probable cause requires a showing that 'the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.' " *State v. Barron*, 170 Wn. App. 742, 750, 285 P.3d 231 (2012) (quoting *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986)).

Givens attempted to arrest Dukes for obstruction of a law enforcement officer, a gross misdemeanor. RCW 9A.76.020(3). A person obstructs a law enforcement officer if he or she "willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1). When an officer makes a lawful *Terry*[2] stop, flight from the officer constitutes an obstruction of a law enforcement officer. *State v. Little*, 116 Wn.2d 488, 498, 806 P.2d 749 (1991). Therefore, the issue here is whether Givens' detention of Dukes constituted a lawful *Terry* stop.

---

[1] RCW 10.31.100 was amended in 2014, but the amendments do not relate to the language referenced here.

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

A police officer may conduct a *Terry* stop – a warrantless investigative stop – based upon less evidence than is needed to establish probable cause to make an arrest. *State v. Acrey,* 148 Wn.2d 738, 746-47, 64 P.3d 594 (2003). But the officer must have "a reasonable suspicion, grounded in specific and articulable facts, that the person stopped has been or is about to be involved in a crime." *Id.* at 747. "A reasonable, articulable suspicion means that there 'is a substantial possibility that criminal conduct has occurred or is about to occur.' " *State v. Snapp,* 174 Wn.2d 177, 197-98, 275 P.3d 289 (2012) (quoting *State v. Kennedy,* 107 Wn.2d 1, 6, 726 P.2d 445 (1986)). A mere hunch not supported by articulable facts that the person has committed a crime is not enough to justify a stop. *State v. Doughty,* 170 Wn.2d 57, 63, 239 P.3d 573 (2010).

We determine the propriety of an investigative stop – the reasonableness of the officer's suspicion – based on the "totality of the circumstances." *Snapp*, 174 Wn.2d at 198. The focus is on what the officer knew at the time of the stop. *State v. Lee*, 147 Wn. App. 912, 917, 199 P.3d 445 (2008). We base our evaluation of reasonable suspicion on " 'commonsense judgments and inferences about human behavior.' " *Id.* at 917 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000)).

Here, Givens testified that he stopped to speak with Dukes and Minjarez because he suspected that they were involved in some type of domestic disturbance. His suspicion was based on the facts that he saw Dukes pointing at Minjarez with his face about six inches from hers, and it looked like Dukes was angry and yelling. Givens' testimony established that he had specific and articulable facts to support his suspicion that Dukes and Minjarez were involved in a domestic dispute. Accordingly, the State presented sufficient evidence to show that the warrantless investigative stop conducted by Givens was lawful.

Because Givens' initial investigative stop was lawful, when Dukes attempted to leave he was obstructing Givens' investigation. *Little*, 116 Wn.2d at 498. Therefore, Givens had probable cause to arrest Dukes for obstruction of a law enforcement officer. Accordingly, we hold that the State presented sufficient evidence to show that Dukes resisted a lawful arrest.

B.    PROSECUTORIAL MISCONDUCT

Dukes argues that the prosecutor made impermissible adverse inferences from Dukes asking Givens if he was being detained and attempting to leave the area, which Dukes claims are protected constitutional rights. We disagree that the prosecutor's comments were improper.

1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). We analyze the prosecutor's conduct and whether prejudice resulted therefrom based on the full trial context including the evidence presented, the issues in the case, the prosecutor's total argument, and the instructions given to the jury. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

2.    Improper Argument

During closing argument, the prosecutor asked the jury a number of rhetorical questions to challenge Dukes' credibility. The prosecutor first recounted Dukes' testimony that he meant to be cooperative by moving away from Givens and Minjarez to wait by his bags. Then the prosecutor asked whether that testimony was "consistent with [Dukes] asking several times, 'Am I being detained? Am I being detained?' Well, why ask that if you're just going to hang out

6

there with your stuff?" RP at 380. Later, the prosecutor asked, "[I]f Mr. Dukes felt he did nothing wrong, why didn't he stay there?" and "If [Dukes] did nothing wrong, why not just let the officer confirm that?" RP at 414, 416.

Dukes argues that because the First Amendment to the United States Constitution protects questions about police action, his question – "Am I being detained?" – was an exercise of his constitutional right. Dukes also argues that his question was asked in an effort to determine his rights under the Fourth Amendment, which permits an individual to walk away from a social encounter with law enforcement. He cites the general rule that the State may not draw adverse inferences from the exercise of a constitutional right. *State v. Rupe*, 101 Wn.2d 664, 705, 683 P.2d 571 (1984).

However, "not all arguments touching upon a defendant's constitutional rights are impermissible comments on the exercise of those rights." *State v. Gregory,* 158 Wn.2d 759, 806, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R.,* 181 Wn.2d 757, 336 P.3d 1134 (2014). Where the focus of a prosecutor's comment is not on the right itself, it does not violate the defendant's constitutional right at issue. *Id.* at 807.

Here, the prosecutor was not focusing on the mere fact that Dukes exercised his right to question Givens, but instead was highlighting that the specific question Dukes asked belied his testimony that he intended to stay in the area and wait by his bags. Dukes cites no authority supporting his claim that this type of argument is improper. Further, it is well established that speech protected by the First Amendment can be used to establish the elements of a crime or prove motive or intent, subject to the rules of evidence. *See Wisconsin v. Mitchell*, 508 U.S. 476, 489, 113 S. Ct. 2194, 2201, 124 L. Ed. 2d 436 (1993).

In addition, Dukes cites no authority for the proposition that a person has a constitutional right to walk away from a lawful *Terry* detention. As discussed above, attempting to leave such a detention is evidence of interference with a law enforcement officer.

We hold that the prosecutor's arguments were not improper, and therefore the prosecutor did not commit misconduct.

C.    REASONABLE DOUBT INSTRUCTION

Dukes argues that the trial court erred by giving a reasonable doubt instruction identical to WPIC 4.01, which states "[a] reasonable doubt is one for which a reason exists," because the instruction erroneously suggests that the jury must be able to articulate a reason for its doubt before it can acquit. We decline to address this issue because Dukes did not object to this instruction in the trial court.

A party generally waives the right to appeal an error unless there is an objection in the trial court. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). One exception is for "manifest error affecting a constitutional right." RAP 2.5(a)(3); *Kalebaugh*, 183 Wn.2d at 583. To determine whether we should consider an unpreserved error under RAP 2.5(a)(3), we inquire whether (1) the error is truly of a constitutional magnitude, and (2) the error is manifest. *Kalebaugh*, 183 Wn.2d at 583. An error is manifest when the appellant shows actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). The asserted error must have practical and identifiable consequences in the trial court. *Id.* The focus of the actual prejudice inquiry is whether it is obvious from the record that the error warrants appellate review. *Id.* at 99-100.

Here, Dukes makes a claim of constitutional magnitude – instructions that misstate the reasonable doubt standard are constitutional errors. *Kalebaugh*, 183 Wn.2d at 584. However, Dukes cannot show an obvious error. The trial court's reasonable doubt jury instruction was

identical to WPIC 4.01. In *State v. Bennett*, the Supreme Court directed trial courts to exclusively use WPIC 4.01 to instruct juries on the burden of proof and the definition of reasonable doubt. 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). In *Kalebaugh*, the Supreme Court recently reaffirmed that WPIC 4.01 was the "proper" instruction and "the correct legal instruction on reasonable doubt." 183 Wn.2d at 582, 585-586. The court distinguished between the proper language of WPIC 4.01 ("a doubt for which a reason *exists*") and the trial court's improper additional instruction in that case ("a doubt for which a reason *can be given*"). *Id.* at 585. Similarly, the Supreme Court in *Emery* stated that the prosecutor in closing argument "properly" described reasonable doubt as a doubt for which a reason exists. 174 Wn.2d at 760.

Dukes cannot show that the trial court's reasonable doubt instruction constituted a manifest error. Accordingly, we will not consider his unpreserved challenge to this instruction.

We affirm Dukes' convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.


We concur:

_____
WORSWICK, J.

_____
JOHANSON, C.J.

9