# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56849-7-II |
| Respondent, | |
| v. | |
| SAMUEL JAMISON DEWEY, aka SAMUEL DEWEY, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. — After committing two unrelated crimes, Samuel Dewey was charged with two counts of first degree assault and one count of second degree assault involving domestic violence. The State offered Dewey a global resolution to both sets of charges. Dewey accepted the plea offer. As a part of Dewey's community custody, the superior court ordered Dewey to undergo a mental health evaluation and corresponding treatment. Finding Dewey indigent, the superior court also stated it would not impose discretionary legal financial obligations (LFOs). The judgment and sentence included a mental health evaluation order and discretionary LFOs. Dewey appeals, arguing that the superior court erred by ordering a mental health evaluation without first finding him mentally ill, as required by RCW 9.94B.080, and by imposing community supervision fees when it stated it would not mandate discretionary LFOs. He also filed a statement of additional grounds for review (SAG), as well as a supplemental brief asking us to remand for the superior

court to strike the $500 crime victim penalty assessment, the $100 DNA collection fee, and the interest on his restitution from his judgment and sentence.

We remand for the superior court to determine whether to order a mental health evaluation consistent with the statutory requirements. On remand, the superior court shall also strike the community supervision fees, the $500 crime victim penalty assessment, and the $100 DNA collection fee from Dewey's judgment and sentence. The superior court shall also consider whether to waive the interest on Dewey's restitution. We reject the claims of error in Dewey's SAG.

FACTS

I. BACKGROUND

In March 2021, Samuel Dewey stabbed two convenience store employees after they asked him to leave the store. The State charged him with two counts of first degree assault, each with a deadly weapon enhancement. In August 2021, Dewey attacked another person whom he had been dating " 'on and off' for the past few years." Clerk's Papers (CP), *State v. Dewey*, No. 56852-7-II, at 1-2 (Wash. Ct. App.). He tore the victim's "tank top, giving her multiple scratches on the chest and shoulders," and strangled her. *Id.* at 2. For this incident, the State charged him with one count of second degree assault – domestic violence.

The cases were addressed together before the superior court. Dewey was absent on the scheduled trial date because he had injured himself, was placed in a restraint chair, and was awaiting jail mental health services. Dewey had "cut his forearms" and "was slamming or banging his head against the wall [such] that he [ ] open[ed] up a laceration on his head." Verbatim Rep. of Proc. (VRP) (Mar. 31, 2022) at 5-6. "[T]here was a sufficient amount of blood associated with the

2

head injury." *Id.* at 6. Despite the circumstances, Dewey's counsel told the court that he did not "have concerns about [his] client's competency," and responded affirmatively to the superior court's questions as to whether Dewey "appeared to be oriented," was "responsive to questions," and "knew his legal predicament." *Id.* at 7.

The trial date was reset for the following Monday. On that day, the court clerk informed the parties that the jail reported that Dewey was "harming himself again, hitting his head against the wall, punching the walls." VRP (Apr. 4, 2022), *State v. Dewey*, No. 56849-7-II, at 3 (Wash. Ct. App.). Dewey nevertheless appeared in court.

## II. Plea Bargain and Sentencing

In a global resolution for both incidents, Dewey agreed to plead guilty to one count of first degree assault without a deadly weapon enhancement and to one count of second degree assault. In the statement of defendant on plea of guilty regarding the first degree assault, Dewey stated that he "did intentionally make harmful contact with [the victims] with an object likely to produce great bodily harm and with the intent to inflict great bodily harm." CP, No. 56849-7-II, at 31 (capitalization omitted). Regarding the second degree assault, Dewey instead allowed the court to review the police reports and/or the statement of probable cause to establish a factual basis for his plea.

At the plea hearing, Dewey said he understood the terms of the plea agreement and accepted the State's offer. Defense counsel stated that he and Dewey had "thoroughly gone through the statement of defendant on plea of guilty," including Dewey's initials "in the margins throughout the document" that "memorialize[d] those sections . . . that [they] went thoroughly through." VRP (Apr. 4, 2022), No. 56849-7-II, at 6-7. Dewey confirmed that he had reviewed the

two statements of defendant on plea of guilty with his attorney, understood them, and did not have any questions about them. When asked by the court if he understood "every one of the[ ] rights [he was] giving up" by pleading guilty, Dewey said, "Yes, I do." *Id.* at 10-11. He also agreed that nobody had threatened, forced, or induced him into pleading guilty. The court found that there was a "factual basis for the plea, that the defendant underst[ood] the nature of the charge and the consequences of the plea, and that it was a knowing, voluntary and intelligent plea" as to each cause number. *Id.* at 13.

At the sentencing hearing, Dewey asked to withdraw his plea and for new counsel. He stated that he "[felt] like [he] was under duress, and [his] only option was to take a ten-year deal because [he was] so afraid of losing such a significant amount of [his] life" in prison. VRP (Apr. 8, 2022) at 24. The court considered but denied his requests because Dewey had not "described any other pressure other than [his counsel] apparently offering the opinion that [Dewey was] unlikely to succeed at trial." *Id.* at 27. The court said that the feeling of pressure as a criminal defendant was normal, "unless [the defendant] just completely detach[ed] from reality." *Id.* at 24. Dewey "seem[ed] completely in touch with reality, so [the court had] no concerns there." *Id.*

Dewey was sentenced to 120 months for the first degree assault and 17 months for the second degree assault, to be served concurrently, with 54 months of community custody total, and ordered to have no contact with the victims. The court also ordered Dewey to undergo a "mental health evaluation as part of his community custody and . . . any follow-up treatment." *Id.* at 39. The court found Dewey indigent, stating that it would "not impose any other legal financial obligations" aside from the crime victim penalty assessment and biological testing fee. *Id.* However, the judgment and sentence for each cause number provides that Dewey must pay

supervision and community placement fees as determined by the Department of Corrections. The court also imposed the $500 victim penalty assessment and $100 DNA collection fee. The judgment and sentence provides that any "restitution obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments." CP at 42.

Dewey appeals the superior court's mental health evaluation order and imposition of discretionary supervision fees. He also filed a statement of additional grounds (SAG) for our review on appeal.[1] In a supplemental brief, Dewey relies on recent statutory amendments in requesting that we remand for the superior court to strike the $500 crime victim penalty assessment, the $100 DNA collection fee, and the interest on his restitution from his judgment and sentence.

## DISCUSSION

### I. STANDARD OF REVIEW

A superior court may impose crime-related community custody conditions on a defendant. *State v. Brooks*, 142 Wn. App. 842, 850, 176 P.3d 549 (2008). We review imposed community custody conditions for an abuse of discretion. *Id.*; *State v. Johnson*, 184 Wn. App. 777, 779, 340 P.3d 230 (2014). An abuse of discretion occurs if the superior court's decision is "manifestly unreasonable or based on untenable grounds." *Johnson*, 184 Wn. App. at 779.

### II. MENTAL HEALTH EVALUATION AND TREATMENT

Dewey asks us to remand for the superior court to strike the mental health evaluation from his judgment and sentence. He argues that to order a mental health evaluation, the superior court

---

[1] RAP 10.10

should have first found that Dewey was mentally ill, as required by RCW 9.94B.080. The State concedes that the superior court failed to make the findings required by RCW 9.94B.080, but argues that the correct remedy is to remand for the superior court to determine whether a mental health evaluation should be ordered rather than directing the superior court to strike the mental condition. We agree with the State.

RCW 9.94B.080 provides:

> The court may order an offender whose sentence includes community placement or community supervision to undergo a mental status evaluation and to participate in available outpatient mental health treatment, if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense.

The mental health evaluation order may be "based on a presentence report and . . . mental status evaluations that have been filed with the court." *Id.*; *see also State v. Shelton*, 194 Wn. App. 660, 676 n.11, 378 P.3d 230 (2016).

In *State v. Jones*, 118 Wn. App. 199, 208-11, 76 P.3d 258 (2003), we concluded that the superior court erred in imposing a mental health treatment and counseling order without following the requirements of RCW 9.94A.505(9), *recodified as* RCW 9.94B.080 (LAWS OF 2008, ch. 231, § 53). During a plea hearing, the defendant's "attorney explained that [the defendant] was bipolar [and] that [the defendant] was off his medications . . . [and] using methamphetamine at the time of his crimes." *Id.* at 202. However, the superior court "did not obtain or consider a presentence report or mental status evaluation[,] [n]or did [it] make a finding that [the defendant] was a person whose mental illness had contributed to his crimes." *Id.* at 209. We remanded, instructing the superior court to "strike [this] condition . . . unless it determines that it can presently and lawfully comply with [the statute]." *Id.* at 212.

Similarly, Division One of this court reversed the imposition of a mental health evaluation because the superior court's order did not comply with RCW 9.94B.080, instructing the superior court "to determine whether to order a mental health evaluation" pursuant to RCW 9.94B.080. *Shelton*, 194 Wn. App. at 676.

Here, we agree with the parties that the superior court abused its discretion in ordering a mental health evaluation and treatment without first meeting the requirements of RCW 9.94B.080. We remand for the superior court to determine, consistent with the requirements of RCW 9.94B.080, whether Dewey should be required to obtain a mental health evaluation and complete any recommended treatment.

## II. DISCRETIONARY LEGAL FINANCIAL OBLIGATIONS

Dewey argues that the superior court erred in imposing community supervision and placement fees because it intended to waive all discretionary LFOs. The State concedes the error. We accept the State's concession. Accordingly, we remand for the superior court to strike these fees.

## III. STATEMENT OF ADDITIONAL GROUNDS

Dewey submitted a SAG raising additional claims of error. Finding no error, or that the additional grounds would require us to consider matters outside of the record, we reject these claims.

A.     Arrest and Search of Apartment

Dewey raises several claims of error asserting that law enforcement unlawfully arrested him and searched his apartment. He asserts that there were no affidavits or search warrants for his arrest, that there was no probable cause for his arrest, and that there was no established nexus

between him, the search of his apartment, and items seized. He then argues that the police unlawfully seized items from his apartment. We disagree.

Probable cause for arrest exists when the arresting officer has sufficient knowledge of and " 'reasonably trustworthy information' " regarding " 'facts and circumstances' " that would lead a " 'person of reasonable caution' " to believe that an offense was committed. *State v. Barron*, 170 Wn. App. 742, 750, 285 P.3d 231 (2012) (quoting *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986)). A search warrant has probable cause if a supporting affidavit "sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999).

First, Dewey's assertion that law enforcement did not submit affidavits of probable cause is plainly erroneous. Second, these affidavits present sufficient facts and circumstances such that law enforcement did have probable cause for his arrest and search of his apartment. When law enforcement arrived at Dewey's apartment, they were responding to a report of domestic violence. In the stabbing case, law enforcement identified Dewey from surveillance camera footage and found items of clothing that appeared to be stained with blood inside his apartment. Law enforcement lawfully arrested him, searched his apartment, and therefore lawfully seized items relevant to Dewey's case.

B.      Invalid Plea

Dewey asserts that his plea agreement is invalid on its face and unenforceable because he did not agree to it knowingly, willingly, or intelligently. He states that his lawyer "did not explain the totality of the plea" and the "sanctions to be imposed." SAG at 4. Dewey also argues that his

lawyer should have had him psychologically examined "in accordance with the Trueblood doctrine" which would have had a "direct bearing on the plea-colloquy and rendered the plea invalid." Mot. to Suppl. SAG at 4.

To be valid, a "guilty plea must be intelligently and voluntarily made and with knowledge that certain rights will be waived." *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). "Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances." *Id.* In *State v. Snider*, 199 Wn.2d 435, 450, 508 P.3d 1014 (2022), our supreme court held that an "extended colloquy" in which the superior court "confirm[ed] [the defendant's] understanding of the charge against him" supported that the plea was knowing, voluntary, and intelligent.

In this case, as in *Snider*, the superior court engaged Dewey in a colloquy during which he confirmed his understanding of the plea bargain. The record of that proceeding indicates that the plea deal was entered into knowingly, willingly, voluntarily, and intelligently. When Dewey tried to withdraw his plea deal at the sentencing hearing, claiming he was under duress, the superior court provided him the opportunity to explain, but he did not "describe[ ] any other pressure other than [his counsel] apparently offering the opinion that [Dewey was] unlikely to succeed at trial." VRP (Apr. 8, 2022) at 27. Dewey had ample opportunity to clarify his understanding of the plea deal. The totality of the circumstances in this case, as ascertained from the record before us, suggests that Dewey pleaded guilty knowingly, willingly, and intelligently.

As for his argument about the psychological evaluation, the superior court clarified with Dewey's attorney that Dewey was competent. The court also stated, during the sentencing hearing, that it believed that Dewey was "in touch with reality." *Id.* at 24. The record suggests that Dewey

was competent and understood his "legal predicament," contrary to Dewey's assertions. VRP (Mar. 31, 2022) at 7.

C.    Matters Outside the Record

Dewey asserts that the police responded to a "false police report" made by the victim of the domestic violence assault case. SAG at 2. He argues that he was subject to an "illegal Terry stop," because he "did not show any signs of innocuous behavior or criminal activity." *Id.* at 3. He also says he was unlawfully arrested and transported by plain clothes police offers who failed to read him his Miranda rights. *Id.* The record before us does not include sufficient information for us to address these assertions. Dewey may choose to file a personal restraint petition to "raise issues on appeal that require evidence or facts not in the existing trial record." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

D.    Grounds Not Sufficient for Review

Dewey asserts that he received ineffective assistance of counsel, alleging that defense counsel introduced unprofessional errors that would have changed the outcome of the case. He claims vindictive prosecution because the State allegedly "made threats of stacking additional charges or confinement to obtain the upper hand" in his plea deal. SAG at 5. Additionally, he asserts a violation of his due process rights due to an unfair trial that "resulted in egregious prejudice." *Id.* He also asserts that "[i]nformation of any cell site simulator or stringray device" and "information . . . of an informant" was not disclosed. Mot. to Suppl. SAG at 4. Finally, Dewey claims that the "[S]tate and court took up proceedings in absentia[,] claiming [he] was in segregation due to mental health," and that he had a "right to be present at every stage of the proceedings against [him]." *Id.*

Under RAP 10.10(c), we need not consider a defendant's SAG claims if the defendant fails to "inform the court of the nature and occurrence of alleged errors." We are "not obligated to search the record in support of claims made" in a SAG. *Id.* Dewey does not elaborate on these claims. These assertions of error are too vague to allow us to identify specific issues, and we do not reach them.

IV. CRIME VICTIM PENALTY ASSESSMENT, DNA COLLECTION FEE, AND RESTITUTION INTEREST

In a supplemental brief, Dewey asks us to remand for the superior court to strike from his judgment and sentence the $500 crime victim penalty assessment, the $100 DNA collection fee, and the interest on his restitution. He argues that recent amendments to RCW 7.68.035 provide that the penalty assessment shall not be imposed against a defendant who is indigent at the time of sentencing, and that the superior court made such a finding here. LAWS OF 2023, ch. 449, § 1. Furthermore, he argues that RCW 43.43.7541 was also amended to remove the DNA collection fee requirement. LAWS OF 2023, ch. 449, § 4. The State does not object to a remand for purposes of striking the penalty assessment or the DNA collection fee from Dewey's judgment and sentence. We accept the State's concession. Accordingly, we remand for the superior court to strike the $500 crime victim penalty assessment and the $100 DNA collection fee from Dewey's judgment and sentence.

Dewey also asks us to remand for the superior court to consider waiving interest on Dewey's restitution. A different recent amendment to RCW 10.82.090 provides that the superior court "may elect not to impose interest on any restitution the court orders" and that this determination shall be based on factors such as whether the defendant is indigent, experiencing homelessness, or mentally ill, and whether the victim would experience financial hardship if

11

interest is not imposed. LAWS OF 2022, ch. 260, § 12. Dewey argues that, although this provision did not take effect until after his sentencing, "it applies to him because his case is still on direct appeal." Suppl. Br. of Appellant at 6.

The State disputes this. It argues that the principle Dewey relies on applies to costs under RCW 10.01.160(2), and restitution interest is not such a cost. The State cites the following language from *State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018), for its proposition: "Because [the relevant] amendments pertain to *costs imposed upon conviction* and Ramirez's case was not yet final when the amendments were enacted, Ramirez is entitled to benefit from this statutory change." (Emphasis added.). In *State v. Ellis*, __ Wn. App. __, 530 P.3d 1048, 1057 (2023), we considered the amendment to RCW 10.82.090 and relied on *Ramirez* in our decision to remand for the superior court to decide whether to impose interest on the defendant's restitution after consideration of the relevant factors. The State argues that "[t]here is no basis to extend the holding in *Ramirez* to financial obligations that are not costs, such as the restitution interest at issue." Resp. to Suppl. Br. of Appellant at 17.

The State also relies on *State v. Jenks*, 197 Wn.2d 708, 723, 487 P.3d 482 (2021), in which the supreme court clarified that *Ramirez* and the case on which *Ramirez* relied "dealt with the narrow subject matter of 'costs imposed upon conviction' " and declined to extend *Ramirez* to "the determination of whether a defendant qualifies as a persistent offender" because "[s]uch subject matter is not analogous." (quoting *Ramirez*, 191 Wn.2d at 749). But restitution interest is analogous to costs imposed upon conviction, and we therefore agree with our prior holding in *Ellis* that the amendment to RCW 10.82.090 regarding the superior court's ability to waive interest on restitution applies to Dewey because his case is on direct appeal. Accordingly, we remand for the

No. 56849-7-II

superior court to decide whether to impose interest on Dewey's restitution amount after consideration of the relevant factors under RCW 10.82.090(2).

CONCLUSION

We remand for the superior court to determine whether to order Dewey a mental health evaluation and corresponding treatment consistent with the requirements of RCW 9.94B.080. We also remand for the superior court to strike the discretionary community supervision fees from Dewey's judgment and sentence, as well as the $500 crime victim penalty assessment and the $100 DNA collection fee. The superior court shall also consider whether to waive the interest on Dewey's restitution. We reject the claims of error raised in Dewey's SAG.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

MAXA, J.

VELJACIC, J.

13