

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 0 9 2015

Madsen, C.J.

CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on July 9, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 89971-1 |
| Respondent, | ) | |
| v. | ) | En Banc |
| CHADWICK LEONARD KALEBAUGH, | ) | |
| Petitioner. | ) | Filed JUL 0 9 2015 |

YU, J.— Chadwick Leonard Kalebaugh appeals his first degree child molestation conviction and claims reversible error based on the trial judge's misstatements regarding the meaning of "reasonable doubt" in his preliminary remarks to the jury venire. Kalebaugh did not object and raises the issue for the first time on appeal. We reach the unpreserved error because it is a manifest constitutional error under RAP 2.5(a)(3), but we affirm because the error was harmless beyond a reasonable doubt.

## FACTS AND PROCEDURAL HISTORY

On October, 28, 2011, Kristal Strong had a birthday party for her son at their

Napavine home. Strong and her children lived there with several other individuals, including Tiffany S., Tiffany's two sons, and Kalebaugh. Tiffany's six-year-old daughter H.S., who typically lived with her grandparents, was also staying at the house that day. The party ended sometime in the evening, and Tiffany put her three children down to sleep in the living room. The two boys settled in on a couch and H.S. on an adjacent love seat. The adults then retreated to the garage.

Jacob Murphy, a friend who had come over earlier to join the gathering in the garage, stayed overnight. Murphy slept in the same room on the couch opposite H.S.'s love seat. During the night, Murphy saw Kalebaugh lay next to the love seat, reach his hand under the blanket covering H.S., and make a rubbing motion in the area between her knees and her belly button. Murphy confronted Kalebaugh and alerted Tiffany, who found the girl's shorts bunched up so that her underwear was exposed. Kalebaugh was charged with first degree child molestation, though he denied touching the girl, and the case proceeded to trial.

On the first day of trial, a panel of potential jurors were brought into the courtroom to begin jury selection. The presiding judge introduced himself and made some preliminary remarks about the trial process and what jurors might expect. The judge read the charge against Kalebaugh and explained how evidence would be presented during trial. The judge further advised prospective jurors that Kalebaugh was presumed innocent and that the State had the burden of proving each and every

element beyond a reasonable doubt. The judge also read the pattern instruction on reasonable doubt, including:

> A "reasonable doubt" is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the evidence or lack of evidence. If after such consideration you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Verbatim Report of Proceedings (Jan. 3, 2012) (VRP) at 9; *cf.* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008) (WPIC). The judge then continued:

> If after your deliberations you do not have a doubt for which a reason can be given as to the defendant's guilt, then, you are satisfied beyond a reasonable doubt.
> On the other hand, if after your deliberations you do have a doubt for which a reason can be given as to the defendant's guilt, then, you are not satisfied beyond a reasonable doubt.

VRP at 9. Kalebaugh did not object to any of these remarks. After two hours of voir dire, a 12 person jury (plus one alternate) was sworn and empaneled to hear the case.

The judge then read to the jury what he called "preliminary instructions," which included another explanation that it was the State that bore the burden of proof. He twice told jurors that he would instruct them on the law at the end of the case and would require the jury to follow those instructions. The judge concluded by admonishing jury members to keep their minds open and not to decide any issue

in the case until they heard all the evidence. The jury subsequently heard testimony for the next two days.

At the close of evidence, the trial judge orally instructed the jury on the law and provided them with several written copies of the court's instructions. These final instructions were unremarkable in that they were the relevant Washington pattern jury instructions. They included instructions to follow the law as given, to presume Kalebaugh innocent, and to acquit if a reasonable doubt existed as to any element of the crime. More importantly and relevant to our review, the court's instructions included the complete and proper version of WPIC 4.01, the instruction on reasonable doubt. The jury deliberated six hours and returned a guilty verdict.

Kalebaugh challenged the trial judge's opening remark for the first time on appeal, arguing the comment deprived him of a fair trial. In a split decision, the Court of Appeals held the error was not reviewable because Kalebaugh failed to object at trial and affirmed the conviction. *State v. Kalebaugh*, 179 Wn. App. 414, 420, 318 P.3d 288 (2014). We granted review. *State v. Kalebaugh*, 180 Wn.2d 1013, 327 P.3d 54 (2014).

ANALYSIS

An established rule of appellate review in Washington is that a party generally waives the right to appeal an error unless there is an objection at trial. RAP 2.5(a). Although this rule insulates some errors from review, it encourages parties to make

timely objections, gives the trial judge an opportunity to address an issue before it becomes an error on appeal, and promotes the important policies of economy and finality. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

But as with many general rules, there are exceptions, and we will review some errors even without an objection below. One exception is for "manifest error[s] affecting a constitutional right." RAP 2.5(a)(3). This exception strikes a careful policy balance. On the one hand, a procedural rule should not prevent an appellate court from remedying errors that result in serious injustice to an accused. At the same time, if applied too broadly RAP 2.5(a)(3) will devalue objections at trial and deprive judges of the opportunity to correct errors as they happen. *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988).

So before we review the merits of an unpreserved error under RAP 2.5(a)(3), we ask two questions: (1) Has the party claiming error shown the error is truly of a constitutional magnitude, and if so, (2) has the party demonstrated that the error is manifest? *O'Hara*, 167 Wn.2d at 98. These gatekeeping questions open meritorious constitutional claims to review without treating RAP 2.5(a)(3) as a method to secure a new trial every time any error is overlooked. *State v. Lamar*, 180 Wn.2d 576, 582, 327 P.3d 46 (2014) (citing *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)).

Kalebaugh meets the first part of the RAP 2.5(a)(3) analysis, as his asserted

error clearly implicates a constitutional interest. The presumption of innocence "is the bedrock upon which the criminal justice system stands." *State v. Bennett*, 161 Wn.2d 303, 315, 165 P.3d 1241 (2007). Instructions that misstate reasonable doubt or shift the burden of proof to the defendant are constitutional errors. *State v. McCullum*, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983). The error arises from the fundamental constitutional due process requirement that the State bear the burden of proving every element of a crime beyond a reasonable doubt. *State v. Camara*, 113 Wn.2d 631, 640, 781 P.2d 483 (1989); CONST. amend. XIV. The State does not dispute that the judge's remarks are of constitutional magnitude.

Kalebaugh also meets the second part of the RAP 2.5(a)(3) because the asserted error is manifest from the record. In *O'Hara* we held that under RAP 2.5(a)(3), manifestness "'requires a showing of actual prejudice.'" 167 Wn.2d at 99 (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). "To demonstrate actual prejudice, there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935). Next, "to determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *Id.* at 100. The trial judge instructed that a "reasonable doubt"

6

is a doubt for which a reason can be given, rather than the correct jury instruction that a "reasonable doubt" is a doubt for which a reason exists. WPIC 4.01, at 85. The jury instruction given was a misstatement of the law that the trial court should have known, and the mistake is manifest from the record. Thus, Kalebaugh's claim is a manifest constitutional error and can be raised for the first time on appeal.

While the judge gave an erroneous instruction, the error was harmless because it did not lower the State's burden of proof or affect the outcome of the trial. Harmless error analysis occurs *after* the court determines the error is a manifest constitutional error and is a separate inquiry. *O'Hara*, 167 Wn.2d at 99. The judge gave the proper instruction from WPIC 4.01 in his preliminary remarks to prospective jurors before jury selection. He followed the instruction by attempting to further explain reasonable doubt, paraphrasing WPIC 4.01's "a doubt for which a reason *exists*" as "a doubt for which a reason *can be given*." VRP at 9 (emphasis added). Kalebaugh is correct that the law does not require that a reason be given for a juror's doubt, and we have previously acknowledged that reasonable doubt is a difficult concept that can challenge lawyers and jurors alike. *See, e.g., Bennett*, 161 Wn.2d at 316-17 (rejecting the common law *Castle* instruction on reasonable doubt (citing *State v. Castle*, 86 Wn. App. 48, 935 P.2d 656 (1997)). Nevertheless, Kalebaugh conceded at oral argument that the judge's remark "could live quite comfortably" with the final instructions given here and could have been cured with

an additional instruction that jurors did not need to articulate a reason for their doubt. Wash. Supreme Court oral argument, *State v. Kalebaugh*, No. 89971-1 (Sept. 18, 2014), at 37 min., 43 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org. We do not agree that the judge's effort to explain reasonable doubt was a directive to convict unless a reason was given or akin to the "fill in the blank" approach that we held improper in *State v. Emery*, 174 Wn.2d 741, 759, 278 P.3d 653 (2012).

Kalebaugh also suggests the timing of the remark makes it reversible error, since jurors "must have had [the remark] in mind while listening to evidence" and "had no reason to disregard it when it came time to deliberate." Pet. for Review at 8. Even accepting Kalebaugh's first premise—that jurors parsed out a comment about the intricate concept of reasonable doubt and remembered it verbatim through two days of testimony—the jury had ample reason to disregard it before deliberations.

The trial judge properly instructed the potential jurors before these offending remarks, gave clear preliminary instructions after voir dire when the potential jurors became actual jurors, reviewed the presumption of innocence and the State's burden, and told the jury twice that they would receive written instructions at the end of the case. Most importantly, at the end of the case the jurors were provided with the

correct legal instruction on reasonable doubt and paper copies of such instructions were available to the jury during deliberations.

We disfavor the judge's offhand explanation of reasonable doubt at the beginning of this case and any subtle suggestion that a reason must be given to doubt a defendant's guilt. But we do not find it plausible to believe that the jury retained these particular oral remarks made before jury selection three days earlier, ignored the other oral and written instructions, and applied the incorrect legal standard. Jurors are presumed to follow the court's instructions, *State v. Grisby*, 97 Wn.2d 493, 499, 647 P.2d 6 (1982) (citing *State v. Kroll*, 87 Wn.2d 829, 558 P.2d 173 (1976)), and Kalebaugh does not provide any facts to rebut this presumption. The judge's correct instructions given throughout the case cured any potential prejudice that could have possibly arisen. Therefore, the judge's remark was harmless beyond a reasonable doubt.

## CONCLUSION

RAP 2.5(a)(3) provides an avenue for courts of appellate jurisdiction to review unpreserved errors when the errors affect a constitutional right and are manifest from the record. In this case, even though the error was constitutional in nature and manifest under RAP 2.5(a)(3), the error was harmless beyond a reasonable doubt because it did not lower the State's burden of proof of affect the outcome of the trial. We affirm the conviction.

9

_____

Fer, J.

WE CONCUR:

_____

_____

_____

Stephen, J.

_____

Wiggins, J.

_____

Owens, J.

_____

Fairhurst, J.

_____

Gordon McCloud, J.

GONZÁLEZ, J. (concurring)—I agree with the majority that the trial court's preliminary oral instruction was improper and implicated the constitutional due process requirement that the State prove every element of a crime beyond a reasonable doubt. CONST. amend. XIV. I also agree with the majority that in the context of the instructions as a whole, however, the oral instruction did not actually lower the State's burden of proof. Given that, Kalebaugh made no plausible showing the oral instruction had any practical and identifiable consequences in his trial. In my view, the wisest way to dispose of this case is to decline to reach this unpreserved error.

I cannot join the majority's RAP 2.5 analysis because it could be read to eliminate an appellant's burden to make a plausible showing that an unpreserved error had practical and identifiable consequences in the trial of a case. The majority reviews the unpreserved claim under RAP 2.5 because Kalebaugh identifies an error that "implicates a constitutional interest" and the trial "'court could have corrected the error.'" Majority at 6-7 (quoting *State v. O'Hara*, 167 Wn.2d 91, 100, 217 P.3d 756 (2009)). But we have consistently emphasized that RAP 2.5 does not afford review of every error that *implicates* a constitutional right but only errors that *actually prejudiced*

a defendant's constitutional rights at trial. *See, e.g.*, *O'Hara*, 167 Wn.2d at 98 ("[T]he appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.'" (second alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007))). Thus it is an appellant's burden when raising an unpreserved error to make a plausible showing that the error had practical and identifiable consequences in the trial of the case. *See, e.g., id.* at 99 ("To demonstrate actual prejudice, there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" (alteration in original) (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935)); *State v. Lamar*, 180 Wn.2d 576, 583, 327 P.3d 46 (2014); *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). Additionally, the appellant must show that the practical and identifiable consequences "should have been reasonably obvious to the trial court," and the facts necessary to adjudicate the claimed error must be in the record. *O'Hara*, 167 Wn.2d at 108, 99 (citing *McFarland*, 127 Wn.2d at 333).

Requiring a plausible showing of practical and identifiable consequences promotes fairness and efficiency. As the Court of Appeals has

aptly noted, "Criminal law is so largely constitutionalized that most claimed errors can be phrased in constitutional terms." *State v. Lynn*, 67 Wn. App. 339, 342, 835 P.2d 251 (1992). Permitting review of essentially all unpreserved errors that implicate constitutional rights "'undermines the trial process, generates unnecessary appeals,'" and wastes resources. *McFarland*, 127 Wn.2d at 333 (quoting *Lynn*, 67 Wn. App. at 344).

I would find Kalebaugh has not made a plausible showing that the oral instruction had practical and identifiable consequences. Kalebaugh alleges that the trial judge's preliminary explanation of reasonable doubt violated his Fourteenth Amendment right to due process because it undermined the presumption of innocence and lessened the State's burden of proof. But as the majority notes,

> The trial judge properly instructed the potential jurors before these offending remarks, gave clear preliminary instructions after voir dire when the potential jurors became actual jurors, reviewed the presumption of innocence and the State's burden, and told the jury twice that they would receive written instructions at the end of the case. Most importantly, at the end of the case the jurors were provided with the correct legal instruction on reasonable doubt and paper copies of such instructions were available to the jury during deliberations.

Majority at 9. It is not plausible to believe the jury was misled by the preliminary oral instruction delivered to the entire venire before voir dire, when they were later given specific and accurate oral and written

3

instructions. As the majority acknowledges, in the context of the instructions as a whole, the oral instruction "did not lower the State's burden of proof" and was not "a directive to convict unless a reason was given." *Id.* at 7, 8. Kalebaugh has not made a plausible showing that the improper instruction actually affected his due process rights.

While I join the majority in result, I would hold Kalebaugh has not made a sufficient threshold showing of actual prejudice to a constitutional right to warrant review of the unpreserved error.

With these observations, I concur.

González, J.

Madsen, C.J.