# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MARY MITCHELL, | ) | No. 71165-2-I |
| Appellant, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| SOUNDVIEW INVESTMENT GROUP, LLC | ) ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: January 11, 2016 |

SPEARMAN, C.J. — The superior court rejected Mary Mitchell's appeal of a small claims court judgment in favor of Soundview Investment Group, LLC (Soundview). Mitchell appeals, claiming that Soundview committed fraud by falsely stating that it was a licensed and bonded contractor and that she was denied her right to a fair trial because she was not properly served with Soundview's counterclaim. Finding no error, we affirm the superior court.

## FACTS

Mary Mitchell and Stanley Johnson are investors who purchase properties, remodel them, and sell them for a profit. Johnson is also a licensed general contractor who hires subcontractors such as Art by Ara, Inc. (Art) to perform the remodeling work. Art is a licensed and bonded contractor. In early 2013, Mitchell and Johnson began to talk about potentially working together.

Mitchell was interested in having the floors refinished in one of her investment properties. Johnson showed her some examples of work that Art had done, and Art gave Mitchell a bid of $2,300 to perform the floor work. Id. Mitchell told Johnson that her budget was only $1,600. Art agreed to do the work for $1,600 in anticipation of receiving future contracts through Johnson and Mitchell.

Art and Soundview, of which Johnson was the operations manager, submitted a bid for the project on April 2, 2013. Mitchell accepted the bid and gave them a deposit for $825. Art and Soundview had previously worked together on a number of investment projects, and Art agreed to take the job if Soundview acted as the middleman for the relationship and handled communication and billing. Johnson agreed on behalf of Soundview and assured Art about the potential for an ongoing relationship with Mitchell.

Mitchell asked for bids for some additional painting and mirror work. Art agreed to do the requested work on the mirrors for a low additional cost. Art removed the old stain and seal and sanded and sealed the floor. The floor treatment needed at least eight to twelve hours minimum drying time in order for it to cure properly. If the floor is walked on before it is dry, it will cause the treatments to bond together and create a "kind of white ash effect." Verbatim Report of Proceedings (VRP) at 28. In order to remove that effect, the floor must be resanded and resealed.

According to Mitchell, the floors were not done properly because there was visible dust, and "marks, white marks, and part of the floor was black", and there "was dirt under the varnish." VRP at 12. Art had to resand the floor twice

after the original application, because the floor had been walked on before it was dry. Soundview had notified Mitchell that the floor was being walked on and asked her to "'take the key out of the key box'" in order to prevent people from walking on the floor. Id. at 41. Mitchell denied that there were ever people walking on the floor and argued that the damage was a result of Soundview and Art failing to sand the floor properly.

Mitchell brought in another contractor and decided she wanted to change the floor color and gloss finish. Soundview informed her that it would cost more, because it would require resanding the entire floor again and purchasing new products. At that time, the floor was still drying and the final coat of finish was scheduled to be applied that day. Mitchell canceled the appointment, telling Soundview that she was not going to pay any more and that they had to redo it or she was going to hire another contractor.

Soundview and Art did not do any more work for Mitchell and submitted a final invoice for $1,556.64, which was the total of all charges including the mirror work, minus Mitchell's initial deposit. Mitchell did not pay and Soundview and Art filed a lien on the property for the amount due. The property was sold on June 20, 2014 and the lien was not reconciled.

Mitchell filed an action against Soundview and Art in the small claims department of King County District Court on July 12, 2013. Soundview and Art filed a counterclaim for the balance of the contract and other damages. The counterclaim was mailed to Mitchell at her post office box on August 7, 2013. Art submitted a letter explaining the relationships between the two companies and

how Soundview did not do any of the finishing work but was responsible for communicating with the customer and handling the billing.

The small claims court entered judgment on August 23, 2013, in favor of Soundview and Art in the total amount of $2,085.07, finding that Art was a registered contractor, as was Johnson. The court also found that Soundview and Art performed their contractual obligations in a workmanlike manner and made good faith efforts to satisfy Mitchell's complaints.

Mitchell first moved for relief from judgment on August 26, 2013, arguing procedural errors, including that she had no knowledge of any counterclaim until trial and had objected to its introduction. She then appealed the district court's judgment to King County Superior Court on September 20, 2013, arguing only that the contract was invalid on its face because Soundview was not a licensed contractor. The small claims court did not rule on her motion for relief from judgment but forwarded it to the superior court.

The superior court affirmed the district court's decision on November 7, 2013, modifying the judgment amount to $1,556.64, the amount due under the contract. The court found that Johnson was authorized to act as an agent for Art, a licensed and bonded contractor. The court also found that "[r]ather than deficiencies in the defendants' work, it seems that any problems with the finished product were apparently the result of 3rd parties walking on the floor too soon." Clerk's Papers (CP) at 116. Mitchell appeals the decisions of both the small claims and superior courts. Soundview did not file an appellate brief.

## DISCUSSION

An appeal from a small claims judgment or decision is de novo upon the record of the case, as entered by the district court. RCW 12.36.055. Under CRLJ 72, an appeal from a decision of a small claims court operating under chapter 12.40 RCW shall be a trial de novo on the record from the court of limited jurisdiction. The procedures for a trial de novo are defined by CRLJ 73 and CRLJ 75. Under the standard set forth in RCW 12.36.055, this court also reviews de novo the record of the small claims court proceeding.

Mitchell first claims that she is entitled to a new trial because she was not properly served with Soundview's answer and counterclaim. She argues that the small claims court "failed to require proof" that she "had signed for receipt of the answer, counterclaim and discovery," resulting in an unfair trial. Br. of Appellant at 10.

Under RAP 2.5(a), a party generally waives the right to appeal an error unless there is an objection at trial. The rule serves to encourage parties to make timely objections and gives the trial judge opportunity to address issues as they occur. State v. Kalebaugh, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). While Mitchell argued to the small claims court, both at trial and in her motion for relief from judgment, that she did not receive the counterclaim, she failed to raise the issue in her appeal to the superior court. An issue cannot be raised on a second appeal if it could have been raised on the first appeal. State v. Sauve, 100 Wn.2d 84, 87, 666 P.2d 894 (1983).

Mitchell argues that "[i]n a small claims trial ... [t]he parties are not required to make formal objections on the record to preserve them for appeal." Br. of Appellant at 9. She cites no authority for this argument, however. RAP 2.5(a) contains no exception for review of small claims judgments or decisions. Under RCW 12.36.055, the appeal from a small claims judgment shall be de novo upon the record of the case, as entered by the district court. It would be difficult, if not impossible, for an appellate court to review an issue that was not part of the district court's record. Mitchell also argues that service is a jurisdictional issue that may be raised for the first time on appeal. But as the plaintiff, she has already submitted to the jurisdiction of the district court. There are no jurisdictional issues that would enable Mitchell to raise the issue of service of a counterclaim for the first time on appeal.

Even if Mitchell had properly preserved the issue for appeal, we would find no error. The record contains evidence that Soundview complied with the court rule and attempted to serve Mitchell with the counterclaim. Under CRLJ 5(a)(b)(1), "every pleading subsequent to the original complaint" shall be served on an attorney or party "by delivering a copy to him or by mailing it to him at his last known address...." If service is made by mail, "the papers shall be deposited in the post office addressed to the person on whom they are being served, with the postage prepaid. The service shall be deemed complete upon the third day following the day upon which they are placed in the mail...." CRLJ 5(b)(2)(i).

Proof of service of all papers permitted to be mailed may be made by written acknowledgment of service, by affidavit of the person who mailed the

papers, or by certificate of an attorney. CRLJ 5(b)(2)(ii). Here, the record contains a certified mail receipt dated August 7, 2013, and testimony from Johnson that he mailed the claim to the post office box listed on the notice of small claim. Upon proof of mailing, it is presumed that the mail proceeds in due course and the letter is received by the person or entity to whom it is addressed. Olson v. The Bon, Inc., 144 Wn. App. 627, 634, 183 P.3d 359 (2008).

Mitchell argues that the small claims court erred by overlooking Soundview's failure to have obtained a return receipt. But failure to make proof of service does not affect the validity of the service, even for service of a summons and complaint. CRLJ 4(h)(7); Jones v. Stebbins, 122 Wn.2d 471, 482, 860 P.2d 1009 (1993). Soundview has presented unrebutted evidence of mailing the counterclaim; mere denials are insufficient to rebut the presumption of receipt. Wash. Fed. Savings v. Klein, 177 Wn. App. 22, 28, 311, P.3d 53 (2013), review denied, 179 Wn.2d 1019 (2014).

Furthermore, even if Mitchell were able to prove insufficient service of the counterclaim, she cannot show that she was prejudiced. She argues that she "could not prepare argument for court" against Soundview's argument that it properly sanded the floor before treating it. Br. of Appellant at 13. Her claims against Soundview, however, included breach of contract and filing of a false lien. These claims required her to prove that Soundview did not fulfill its expectations under the contract and that it had no basis to file a lien for amounts owed for labor performed on April 3, 2013. Mitchell was not required to provide

any new or additional arguments or evidence in order to defend against the counterclaim.

Next, Mitchell argues that the district and superior courts erred in failing to find that Soundview had made fraudulent misrepresentations based on its work and/or its status as a contractor. According to Mitchell, Soundview denied its failure to properly sand the floor before treating it, and also stated that it was a bonded contractor when it was not.

Fraudulent misrepresentation requires proof by clear, cogent, and convincing evidence of the nine elements of fraud: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff. Stiley v. Block, 130 Wn.2d 486, 505, 925 P.2d 194 (1996).

Mitchell argues that Soundview, via Johnson, represented that it was a contractor and that it would do the work on the floor. She also argues that Johnson misrepresented his own status as a contractor to the small claims court. The record contains no evidence that Johnson or anyone represented to Mitchell that Soundview was a licensed general contractor, only Mitchell's testimony that Johnson told her that he was a contractor. Even if such misrepresentations had been made, Mitchell cannot demonstrate that either Soundview's or Johnson's status was material to the contract. The purpose of the Contractor's Registration Act is "to afford protection to the public including all persons, firms, and

corporations furnishing labor, materials, or equipment to a contractor from unreliable, fraudulent, financially irresponsible, or incompetent contractors." RCW 18.27.140. The act requires all contractors to provide the customer with proof of registration with the Department of Labor and Industries, which includes evidence of bonding and liability insurance. RCW 18.27.114.

Both Art and Soundview were parties to the contract with Mitchell; the record contains undisputed evidence that Art did the work and was a licensed and bonded contractor. Johnson was not a party to the contract. Mitchell could therefore have filed a claim for substandard performance under the contract and she would be protected by Art's bond. It is not required for Soundview or Johnson to also be registered as a contractor, especially when there is no dispute that Johnson was not a party and Soundview did not perform any work.

Mitchell argues that she spoke with Art personally and that a representative told her that they "'had nothing to do with that contract'" and only did the mirrors. Br. of Appellant at 14 (quoting VRP at 18). This testimony, without more, is insufficient to establish that Soundview, not Art, performed the work on the floors as an unlicensed contractor. The record contains a letter from Art specifically stating that Soundview did none of the work and that Art agreed to do the work for Mitchell as long as Soundview was involved in the billing and customer communication. Mitchell's testimony about conversations she had with other representatives of Art do not prove otherwise.

Mitchell also argues that Soundview committed fraud by claiming that it properly sanded the floor. Again, the record contains no evidence that suggests

that Soundview and Art failed to perform the work specified in the contract in a workmanlike manner. Mitchell has not carried her burden of showing that Soundview made any false representation when it claimed to have fulfilled its obligations under the contract.

We affirm the superior court, and decline to award fees to either party on appeal.

Affirm.

WE CONCUR: