# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50340-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| PEDRO LOPEZ TOMAS, aka PABLO LOPEZ TOMAS ESTEBAN, | |
| Appellant. | |

MAXA, C.J. – Pedro[1] Lopez Tomas appeals his conviction of third degree assault. The conviction arose from an incident in which Lopez Tomas hit a police officer in the chest with his head after Lopez Tomas had been handcuffed.

We hold that (1) the State presented sufficient evidence to prove that Lopez Tomas acted with intent despite evidence that he was intoxicated, (2) the State presented sufficient evidence to prove the contact Lopez Tomas initiated was harmful or offensive to the officer, and (3) Lopez Tomas's claim that his detention was unlawful cannot be raised for the first time on appeal because it does not involve a manifest constitutional error. Accordingly, we affirm Lopez Tomas's conviction.

## FACTS

Centralia police officer Mike Smerer was on patrol when he received a dispatch report of a person in the middle of the street waving a knife. When Smerer arrived at the location he did

---

[1] At trial, Lopez Tomas referred to himself as Pablo.

not see anyone with a knife. However, he saw a house matching the description given on the dispatch call and the door was open. Smerer and another officer approached the house to investigate.

After the officers announced their presence, Lopez Tomas came out of the house. Smerer noted that Lopez Tomas matched the description given by the dispatch call and looked sweaty and nervous. Lopez Tomas appeared to be under the influence of some type of drug. Smerer asked Lopez Tomas if he lived in the house and Lopez Tomas replied that he did not.

Smerer considered Lopez Tomas's behavior odd and thought that he was a flight risk. Smerer placed Lopez Tomas in handcuffs in order to continue investigating. Lopez Tomas's behavior became more erratic. Lopez Tomas would not sit still. He attempted to stand up numerous times, and Smerer repeatedly asked him to sit down.

While handcuffed, Lopez Tomas went to one knee and jumped up in the direction of Smerer, striking Smerer in the chest with his head. Lopez Tomas hit Smerer hard enough to move Smerer's foot back but not hard enough to knock him over. Smerer then pushed Lopez Tomas's head away and Lopez Tomas fell to the ground.

The State charged Lopez Tomas with third degree assault for hitting his head against Smerer. When he was arrested, Lopez Tomas told the arresting officer that he remembered the incident, that he was drunk at the time, and that he did stupid things when he was drunk.

Before trial, Lopez Tomas did not raise any objections to his detention or claim that his detention before he struck Smerer was unconstitutional.

Lopez Tomas waived his right to a jury and the trial court conducted a bench trial. Smerer testified that he was hit when Lopez Tomas "threw his body up towards [him] with his head leading." Report of Proceeding (RP) at 15. He described Lopez Tomas's motion of getting

up from his knees and hitting Smerer as a "squat thrust." RP at 15. The prosecutor did not specifically ask Smerer whether he believed that the contact was harmful or offensive.

Lopez Tomas testified that he drank a lot of alcohol the night before the incident and that he could not remember the incident with Smerer. He testified that when he woke up in the hospital he was told that his "system was full of alcohol." RP at 37.

The trial court found Lopez Tomas guilty of third degree assault. The court entered findings of fact that Lopez Tomas's actions were volitional in that he purposefully lunged toward Smerer. Therefore, the trial court concluded that Lopez Tomas had intentionally struck Smerer with his head. The trial court also entered a finding of fact that the contact was offensive because it was uninvited.

Lopez Tomas appeals his conviction.

## ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Lopez Tomas argues that the State did not present sufficient evidence to convict him of third degree assault because the State did not prove both that he acted with intent when he hit Smerer with his head and that the contact with Smerer was harmful or offensive. We disagree.

#### 1. Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). Following a bench trial, we review a trial court's ruling to determine whether substantial evidence supports the trial court's contested findings of fact and whether the findings of fact support the conclusions of law. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014).

We treat findings of fact supported by substantial evidence and unchallenged findings of fact as verities on appeal. *Id.* at 106. We review de novo challenges to the trial court's conclusions of law. *Id.*

In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Cardenas-Flores*, 189 Wn.2d at 265-66. Credibility determinations are made by the trier of fact and are not subject to review. *Id.* at 266. Circumstantial and direct evidence are equally reliable. *Id.*

2.    Elements of Assault

Under RCW 9A.36.031(1)(g), a person is guilty of third degree assault if he or she "[a]ssaults a law enforcement officer . . . who was performing his or her official duties at the time of the assault." The criminal code does not define assault. Therefore, we apply the common law definitions. *State v. Koch*, 157 Wn. App. 20, 34, 237 P.3d 287 (2010).

One definition of assault under common law is assault by actual battery. *See Cardenas-Flores*, 189 Wn.2d at 266. Assault by actual battery involves two elements. First, there must be an intentional touching or striking of another person. *Id.* The State is not required to show that the defendant intended to inflict harm. *Id.* Instead, the intent necessary for assault by actual battery is only the intent to do the physical act constituting the assault. *Id.*

Second, the touching or striking must be harmful or offensive. *Id.* The State need not show that the touching resulted in physical injury. *Id.*

3.    Intent to Assault

Lopez Tomas argues that the State did not present sufficient evidence that he intentionally assaulted Smerer. We disagree.

The trial court found that Lopez Tomas "jumped up" from one knee in the direction of Smerer. Clerk's Papers (CP) at 13. The court also found that Lopez Tomas's actions were volitional because he "purposely lung[ed] forward" toward Smerer. CP at 13. Lopez Tomas does not challenge these findings and therefore they are verities on appeal. *Homan*, 181 Wn.2d at 106. In any event, these findings are supported by substantial evidence. Smerer testified at trial that Lopez Tomas was on his knees a few feet away and thrusted himself at Smerer. Smerer testified also that the distance between them was enough that Lopez Tomas would not have hit him if Lopez Tomas was merely stumbling. Viewed in the light most favorable to the State, this evidence supports an inference that Lopez Tomas acted intentionally in striking Smerer with his head.

Lopez Tomas argues that he could not have formed the intent necessary to commit assault because he was voluntarily intoxicated. Under RCW 9A.16.090, if a crime requires a particular mental state, voluntary intoxication may be considered in determining such mental state. As a result, voluntary intoxication can be a defense to assault if it prevented the defendant from forming the required intent. *State v. Kruger*, 116 Wn. App. 685, 692, 67 P.3d 1147 (2003). Lopez Tomas claims that he presented sufficient evidence of voluntary intoxication, which precluded the State from proving intent beyond a reasonable doubt.

However, the trial court concluded that Lopez Tomas's striking of Smerer was intentional. This conclusion reflects the court's rejection of the argument that Lopez Tomas's intoxication prevented him from forming an intent to assault Smerer. Substantial evidence supports this conclusion.

We hold that sufficient evidence supported the trial court's conclusion that Lopez Tomas intentionally assaulted Smerer.

4.    Harmful or Offensive Contact

Lopez Tomas argues that the State did not present sufficient evidence that his contact with Smerer was harmful or offensive. We disagree.

The trial court found that Lopez Tomas's striking of Smerer was offensive because it was uninvited. Lopez Tomas does not challenge this finding, and therefore it is a verity on appeal. *Homan*, 181 Wn.2d at 106. In any event, the finding is supported by substantial evidence. Smerer testified that the contact was uninvited. Lopez Tomas threw his body up toward Smerer and hit him in the chest, and the contact was forceful enough to move Smerer's foot backwards. And Smerer immediately pushed Lopez Tomas's head away. Viewed in the light most favorable to the State, this evidence supports an inference that Lopez Tomas's striking of Smerer was offensive.

Lopez Tomas cites *Cardenas-Flores*, 189 Wn.2d at 266-67, for the proposition that for an assault by actual battery to have occurred, the victim must perceive the contact to be harmful or offensive. He argues that because Smerer did not testify that the contact was harmful or offensive *to him*, the State failed to prove an essential element of the crime. However, *Cardenas-Flores* does not hold or even suggest that whether an assault has occurred requires testimony from the victim regarding his or her perception of the touching. 189 Wn.2d at 266. The trial court was able to infer from the evidence that the contact was offensive without Smerer's testimony that the contact was offensive.

We hold that sufficient evidence supported the trial court's conclusion that Lopez Tomas assaulted Smerer by initiating offensive contact.

B.     UNLAWFUL DETENTION

Lopez Tomas argues for the first time on appeal that the State violated his constitutional rights by unlawfully detaining him. He claims that because he was unlawfully detained we must reverse his conviction. We decline to consider this argument.

    1.    Legal Principles

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, an officer generally cannot seize a person without a warrant. *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017). However, one exception is a *Terry*[2] investigative detention. *Id.* "Under this exception, an officer may, without a warrant, briefly detain a person for questioning if the officer has reasonable suspicion that the person stopped is or is about to be engaged in criminal activity." *State v. Fuentes*, 183 Wn.2d 149, 158, 352 P.3d 152 (2015). For a *Terry* detention to be valid, the officer must have a "reasonable suspicion of criminal activity based on specific and articulable facts." *Fuentes*, 183 Wn.2d at 158.

We review the validity of an investigative detention by considering the reasonableness of the officer's suspicion given the totality of the circumstances known to the officer. *Weyand*, 188 Wn.2d at 811. "The totality of circumstances includes the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion on the suspect's liberty." *Fuentes*, 183 Wn.2d at 158.

    2.    Failure to Object in Trial Court

Lopez Tomas did not argue in the trial court that his investigatory detention was unlawful. A party generally cannot appeal an error unless there is an objection in the trial court. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). One exception is for "manifest

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

error affecting a constitutional right." RAP 2.5(a)(3); *see Kalebaugh*, 183 Wn.2d at 583. To determine whether we consider an unpreserved error under RAP 2.5(a)(3), we inquire whether (1) the error is truly of a constitutional magnitude, and (2) the error is manifest. *Kalebaugh*, 183 Wn.2d at 583.

A claim that a law enforcement officer seized the defendant in violation of the Fourth Amendment raises an issue of constitutional magnitude. *State v. Torres*, 198 Wn. App. 864, 878-79, 397 P.3d 900, *review denied*, 189 Wn.2d 1022 (2017). The issue here is whether any error was manifest.

An error is manifest when the appellant shows actual prejudice. *State v. O'Hara,* 167 Wn.2d 91, 99, 217 P.3d 756 (2009). The asserted error must have practical and identifiable consequences in the trial court. *Id.* Significantly, "[i]f the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." *Torres*, 198 Wn. App. at 877; *see also O'Hara*, 167 Wn.2d at 99.

Lopez Tomas cannot establish a manifest error because the record does not provide sufficient information about the "totality of the circumstances" surrounding Smerer's detention of Lopez Tomas. *Weyand*, 188 Wn.2d at 811. For example, Smerer was dispatched based on a call from a person who apparently reported that a man was in the street waving a butcher knife. Under certain circumstances, an informant's tip can provide the basis for a lawful investigative detention if the tip bears some indicia of reliability. *See State v. Z.U.E.*, 183 Wn.2d 610, 618, 352 P.3d 796 (2015). The record here is not sufficient for this court to determine whether the call contained information that would have supported a lawful detention of Lopez Tomas.

Further, the lack of a sufficient record is directly related to Lopez Tomas's failure to object to the detention in the trial court. Because Lopez Tomas did not raise the issue, the State had no reason to develop the facts surrounding the detention.

We hold that Lopez Tomas cannot show a manifest error regarding his detention. Accordingly, we decline to consider whether the detention was unlawful.

CONCLUSION

We affirm Lopez Tomas's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

WORSWICK, J.

LEE, J.