# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITY OF BREMERTON, | No. 52724-3-II |
| Appellant, | |
| v. | |
| ROBERT NORMAN THOMPSON, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — We granted discretionary review of the superior court's decision reversing the district court's judgment and sentence, which found Robert Thompson guilty of driving while under the influence of intoxicants (DUI).

The City argues that the superior court erred by ruling that a toxicologist offered impermissible opinion of guilt testimony and the admission of that testimony was manifest constitutional error requiring reversal. Because the untainted evidence of Thompson's impairment was overwhelming, we hold that even if the testimony constituted manifest constitutional error, it was harmless beyond a reasonable doubt. Thus, we reverse the superior court's order and affirm Thompson's conviction.

## FACTS

On the afternoon of August 2015, Kathryn Sorensen sat in the passenger seat of her daughter's van, which was parked outside of a pizzeria. Robert Thompson exited a neighboring business and entered the vehicle parked to the right of the van. As Thompson attempted to reverse his vehicle out of the parking stall, his vehicle struck the van, lifting it up off the ground.

Sorensen attempted to get Thompson's attention by waving, yelling, and honking the van's horn, but Thompson continued to reverse into the van. Eventually, Thompson noticed Sorensen and yelled at her, asking why she was hitting him. Thompson pulled his vehicle forward, and the van returned to the ground.

Sorensen asked Thompson for his insurance. She observed that Thompson's speech was slurred, and he was walking unsteadily. While waiting for law enforcement to arrive, Thompson told Sorensen he was on several medications.

Sorensen's daughter, Patricia Covington, exited the pizzeria when she heard her van's horn. Covington confronted Thompson, who initially asked her why she had hit his car. Thompson then told Covington that he had to hit her van because she was in his way. Covington also observed that Thompson's speech was slurred and he was difficult to understand. Covington saw that Thompson could not stand up straight and was swaying. She thought she smelled alcohol.

Officer Bryan Hall responded to the scene and spoke with Covington, Sorensen, and Thompson. Officer Hall perceived Thompson to be confused. Thompson did not believe he had been in a collision, despite Officer Hall pointing out damage to his vehicle. Officer Hall asked Thompson if he had had any alcohol that day, and Thompson responded that he had had a couple of beers. Later in the conversation, Thompson told Officer Hall he had had two glasses of wine. Thompson also revealed that he was on medications.

Officer Hall became concerned that Thompson may be impaired and called Officer Christopher Faidley, a drug recognition expert (DRE), to the scene. Officer Faidley arrived and observed that Thompson appeared disheveled and his speech was slurred. Thompson reiterated

his belief that he had not been involved in a collision. Officer Faidley administered field sobriety tests and discussed Thompson's medication use with Thompson. Officer Faidley concluded that probable cause existed to arrest Thompson for DUI.

Officer Faidley transported Thompson to the police department and performed a more thorough DRE evaluation. Officer Faidley concluded that Thompson was likely under the influence of a central nervous system depressant. Thompson agreed to provide a blood sample, which was sent to the Washington State Patrol Toxicology Laboratory. The toxicology results showed a blood alcohol level of .031 grams per 100 milliliters. Thompson's blood sample also tested positive for Temazepam, which is a benzodiazepine in the category of central nervous system depressants.

The City charged Thompson with driving under the influence, operation of a motor vehicle without ignition interlock device, and third degree driving while license suspended or revoked. Thompson pleaded guilty to operation of a motor vehicle without ignition interlock device and third degree driving while license suspended or revoked. Thompson proceeded to trial on the DUI charge.

At trial, Washington State Patrol forensic scientist Brittany Thomas provided expert testimony. Thomas noted that the combination of alcohol and Temazepam could create an additive effect on a person making their coordination and balance poor and causing confusion and an inability to focus. The City presented Thomas with a hypothetical scenario:

> [I]f a person takes Temazepam in the morning and drinks alcohol—two glasses of wine in the afternoon, could those—that time spread still provide an additive effect?

Clerk's Papers (CP) at 313. Thomas responded, "Yes. As long as either of those are still present in the blood, then there can be an additive effect." CP at 314.

3

The City expanded on the hypothetical, asking:

If a person who—going back to my scenario—while taking Temazepam in the morning and two glasses of some type of wine or beer in the afternoon, if that person was exhibiting effects of being—you know, would be—of striking another vehicle, of being confused and not knowing they were in an accident, of not being able to track a conversation, of slurred speech or up on . . . unsteady balance and disorientation, in your professional opinion, would that person be impaired by the combination of alcohol and Tamazepam?

CP at 314.  Thomas responded, "Yes, I would agree with that."  CP at 314.  The City revisited

the line of questioning on redirect.

[CITY]:  In looking at the actual test results here, are you able to say they found those levels—just based—looking at that paperwork, if a person is impaired or not impaired based on those levels?

[THOMAS]:  No.

[CITY]:  And what—what is important?  What is the missing element for you not to be able to from that?

[THOMAS]:  Any observations of the individual, either driving performance or observations on the sobriety tests or just general observations from experience.

[CITY]:  So that particular test and those results on that test, could they be impaired?

[THOMAS]:  Yes.

[CITY]:  And but the—the definitive observations would be needed for you to make a full professional opinion on that.

[THOMAS]:  Yes.

[CITY]:  Okay.  However, with the hypothetical that I gave you, which added not only to the drugs, the—the coordination issues and the car crash—on that hypothetical and looking at the blood test result, would you believe the person in that hypothetical would be impaired?

[THOMAS]:  Yes.

[CITY]: And did you believe that that impairment is—is consistent or at least tied to the test results you saw?

[THOMAS]: Yes.

CP at 321-22. Thompson did not object to Thomas's testimony.

During its closing argument, the City recapped the evidence presented during trial, noting

the other important part of this was the Toxicologist seeing an expert . . . make an opinion when you give her a task. So I said to her, if this is your drug and alcohol level to do that test that you're looking at and you have somebody who gets in a crash, who is slurring their speech, who is disoriented, who is disjointed in their speech and not tracking—when you have that happen with this exact blood test, in your expert opinion, is that person in that situation impaired and she said yes. Yes, that person is.

CP at 364.

In its rebuttal closing argument, the City emphasized Thomas's expert opinion:

She's an expert in this area. She said based on those observations, which were two independent witnesses, two Officers, yes. That person on those medications with that alcohol and that behavior at the scene is somebody in that scenario [that] was impaired.

CP at 372.

The jury found Thompson guilty of DUI.

Thompson appealed his conviction and sentence to the superior court arguing, in relevant part, that the admission of the toxicologist's testimony was manifest constitutional error because her testimony constituted improper opinion of guilt testimony. The superior court agreed, ruling:

The testimony of Thomas improperly invaded the province of the trier of fact concerning the guilt of the Defendant, and thereby violated Mr. Thompson's constitutional right of having a jury decide his case. This is manifest constitutional error.
It is impossible to determine from the record what weight the jury gave to this improper evidence. As a result, the Court cannot determine that this error was harmless as a matter of law.

No. 52724-3-II

CP at 75-76.

The City moved for discretionary review by this court, and we granted the motion.

ANALYSIS

The City argues that the expert testimony the City introduced at trial was not improper opinion testimony that constituted manifest constitutional error and, even if it was, any error was harmless. Because the untainted evidence of Thompson's impairment was overwhelming, we hold that even if the testimony constituted manifest constitutional error it was harmless beyond a reasonable doubt.

We review a municipal court's decision under RALJ 9.1, performing the same function as the superior court. *City of Seattle v. May*, 151 Wn. App. 694, 697, 213 P.3d 945 (2009).

Thompson did not object to Thomas's testimony at trial. Generally, we will not consider an issue raised for the first time on appeal unless the party claiming the error can show that an exception applies. RAP 2.5(a); *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011). One exception is for a "manifest error affecting a constitutional right." RAP 2.5(a)(3). To raise the issue for the first time on appeal under RAP 2.5(a)(3), Thompson must demonstrate that the alleged error is truly of a constitutional dimension and that the error is manifest. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). A manifest constitutional error is still subject to a harmless error analysis. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

We presume constitutional error to be prejudicial, and the City bears the burden of proving that the error was harmless. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). We find the error harmless "only if convinced beyond a reasonable doubt any reasonable jury

6

would reach the same result absent the error, and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt." *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996) (citation omitted).

Here, even assuming without deciding that these facts raise a manifest constitutional error, any error is harmless. The untainted evidence of Thompson's guilt is overwhelming. Sorensen and Covington each testified to the events of the collision—Thompson reversed his vehicle into a neighboring parked vehicle, lifting it off the ground. Initially, Thompson appeared not to notice the collision, then he accused the passenger of the parked vehicle of hitting him. At various points following the collision, Thompson wavered between justifying hitting the parked vehicle and denying that any collision occurred. Sorensen and Covington each recalled that Thompson seemed unbalanced and slurred his speech.

Officer Hall and Faidley also testified about their interactions with Thompson. Each officer observed Thompson showing signs of impairment, including denying that any collision occurred, appearing confused, admitting to having multiple alcoholic beverages while taking medications, and slurring his speech. After administering field sobriety tests and a DRE evaluation, Officer Faidley concluded that Thompson was under the influence of a central nervous system depressant. A positive blood test for Temazepam and alcohol confirmed Officer Faidley's conclusion.

Given the overwhelming evidence of Thompson's impairment, we hold that any reasonable jury would have reached the same result absent Thomas's testimony. Accordingly, we hold that any possible error was harmless beyond a reasonable doubt. Thus, we reverse the superior court's order and affirm Thompson's conviction.

No. 52724-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

Sutton, J.

Cruser, J.