IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARY ELLEN SMITH, | ) | No. 39744-1-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SPOKANE TRANSIT AUTHORITY, a | ) | |
| Political Subdivision of the State of | ) | |
| Washington, and JOHN DOE, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, C.J. — Mary Smith appeals a jury verdict that assessed 90 percent contributory fault to her. We affirm.

## FACTS

*Background*

Mary Smith was a direct support professional (DSP). A DSP assists physically disabled adult patients with daily living, including driving and accompanying them on outings. To become a DSP, Smith was required to undergo several hours of training, including training on how to avoid the risk of injury when lifting and moving patients and their equipment.

Smith suffered from chronic back pain. In 2016, she asked that her pain medication be increased. In May 2017, Smith reinjured her back while reaching into a minifridge. In January 2018, Smith sought spinal injections for her back pain.

*Incident*

In February 2018, Smith accompanied Cody Roller in his motorized wheelchair on an outing. The two rode in a paratransit van operated by Spokane Transit Authority (STA). As the van went around a corner, Roller and his wheelchair tipped over because the driver had failed to properly secure it.

Roller, who weighed between 250 and 270 pounds, was uninjured. The driver attempted to right Roller in his wheelchair. He knew he could do this without assistance and did not ask Smith for help.

By the time Smith approached the driver and Roller, Roller was calm. Smith, aware of her chronic back problems, knew that helping the driver would cause her pain. While helping, Ms. Smith injured her lower back.

*Procedure*

Smith filed suit against STA for her lower back injury. STA admitted negligence, but argued that Smith's injury was not related to its negligence. If related, STA argued, Smith either had assumed the risk or was contributorily at fault for her injury. STA also argued that Smith had failed to mitigate her damages.

Before trial, Smith moved for summary judgment as to negligence, causation, and STA's affirmative defenses. The trial court denied Smith's motion, finding an issue of material fact as to whether lifting Roller in his wheelchair had caused Smith's injury, or whether her injury had occurred the following day. Additionally, the court noted an issue of material fact as to whether *Smith's* injury was a foreseeable consequence of the transit driver's negligence. The court's ruling did not address STA's affirmative defenses.

The case was tried to a jury. After both parties rested, Smith renewed her motion for summary judgment with respect to STA's contributory negligence and assumption of risk defenses. Smith argued that a "legal, moral and ethical obligation to act" had compelled her to assist Roller, and that these obligations precluded STA from asserting either an assumption of risk or a contributory negligence defense. Clerk's Papers (CP) at 471. The trial court denied Smith's motion, finding that issues of material fact existed as to Smith's knowledge of the risk she undertook by assisting the driver, and as to the existence of a moral duty.

The jury found STA liable for Smith's injury in the amount of $100,000. However, the jury also found Smith contributorily negligent, and assigned her 90 percent of fault for her injury. The jury further found that Smith had failed to mitigate her damages, but concluded that the amount of her failed mitigation was $0.

3

Smith moved for a new trial or an increased award. In support of her motion,

Smith argued that the trial court had erroneously instructed the jury on contributory

negligence and failure to mitigate because those defenses were not supported by the

evidence, and because permitting such defenses violated public policy. Smith further

argued that her $10,000 recovery was inadequate, and had likely resulted from juror

confusion. The trial court denied Smith's motion.

Smith appeals.

ANALYSIS

Smith raises four broad arguments on appeal, most of which are procedurally

barred. We address each argument in turn.

I.     DENIAL OF SUMMARY JUDGMENT

Smith argues the trial court erred when it denied her motions for summary

judgment. Within this argument, she contends that the public policies of the "Good

Samaritan" and the "Rescue" doctrines prohibit contributory negligence absent a showing

of gross negligence or wanton and willful conduct. Smith failed to raise this issue to the

trial court.

> Failure to raise an issue before the trial court generally precludes a party from raising it on appeal. RAP 2.5. While "this rule insulates some errors from review, it encourages parties to make timely objections, gives the trial judge an opportunity to address an issue before it becomes an error on appeal, and promotes the important policies of economy and finality."

*Wilcox v. Basehore*, 187 Wn.2d 772, 788, 389 P.3d 531 (2017) (quoting *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015)).

Smith argues she sufficiently preserved this issue below. We disagree. The closest she came to raising the issue was in her renewed motion for summary judgment. Without citing any legal authority or making any reference to the Good Samaritan or Rescue doctrines, she argued:

> [Smith] had a legal, moral and ethical obligation to act in light of her client falling over to the floor to attempt to help him and aid him. The law states she must not violate any legal or moral duty. Mary Smith, as the caretaker to the disabled person, had both a legal and moral duty to assist him.

CP at 471. This argument would not have apprised the trial court of the Good Samaritan or the Rescue doctrine, nor would it have apprised it of her novel theory, raised on appeal, that STA had a higher burden of proof to prevail on its defenses.

Smith next contends that the affirmative defense of contributory negligence should not have been submitted to the jury because there was no issue of material fact to support STA's argument that she had assumed the risk of being injured. We disagree.

The driver testified he did not need Smith's help and he did not ask for it. Moreover, Smith had injured her back, nine months before the incident, simply by reaching into a minifridge. Yet Smith—aware of her weak back and knowing that helping the driver would be painful—chose to help the driver. A rational trier of fact

5

could have found that Smith had known helping the driver would injure her back and that she had acted unreasonably by rendering such help.

Smith next contends, at a minimum, the trial court's jury instructions should have acknowledged the existence of a public policy encouraging people to come to the aid of others. In support of her argument, Smith cites *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 913 P.2d 377 (1996). We disagree that the trial court erred.

First, Smith did not propose such an instruction, so she cannot raise this claim of error for the first time on appeal. *Gorman v. Pierce County*, 176 Wn. App. 63, 86, 307 P.3d 795 (2013). Second, *Gardner* speaks of a public policy to "save others from life threatening situations." 128 Wn.2d at 940. Roller was uninjured, and by the time Smith chose to help, he was calm. Because Roller's life was not in peril, the public policy discussed in *Gardner* has no application.

## II.    FAILURE TO MITIGATE

Smith next argues the trial court erred by not granting her motion for summary judgment on STA's failure to mitigate defense. We decline to review her claim of error because the claimed error did not affect the jury's verdict. As noted previously, the jury did not reduce Smith's recovery because of her failure to mitigate.

III.    SPECIAL VERDICT FORM

Smith argues the damages award was improper because (1) the verdict form created confusion as to which party—jury or court—would offset contributory negligence from her total recovery, and (2) the trial court failed to clarify the verdict form despite the jury's request that it do so.

Because Smith did not propose an alternate verdict form before the trial court submitted the challenged form to the jury, we agree with STA that the form itself is not reviewable on appeal. *Gorman*, 176 Wn. App. at 86. However, Smith did object to the trial court's subsequent clarification of the form. We review here the propriety of the trial court's clarification.

*Standard of review*

A trial court's response to a jury query constitutes further jury instruction. *See State v. Sublett*, 176 Wn.2d 58, 82, 292 P.3d 715 (2012). Accordingly, a query response—like a formal instruction—is proper where it "permit[s] the parties to argue their theories of the case, do[es] not mislead the jury, and properly inform[s] the jury of the applicable law." *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). We review jury instructions de novo. *In re Pers. Restraint of Hegney*, 138 Wn. App. 511, 521, 158 P.3d 1193 (2007).

*Confusion and clarification*

Here, the special verdict form asked the following: (1) whether STA was negligent, (2) whether STA's negligence had proximately caused Smith's injuries, (3) what the total amount of Smith's damages was, (4) whether Smith was negligent, (5) whether Smith's negligence had proximately caused her injuries, (6) what proportions of fault were assignable to STA and Smith, respectively, (7) whether Smith had failed to exercise ordinary care in avoiding new damages, and (8) what amount of new damages Smith had failed to avoid.

Having received this form, the jury during deliberations asked the following: "If we decided on a percentage of negligence on both sides (i.e. 60/40) are the total damages automatically adjusted based on those percentages or do we address that amount in question 8?" CP at 513. In reply, the trial court wrote, "The court adjusts the total damages based on the percentages. Questions 4-6 are separate and distinct from questions 7-8." CP at 513.

Plainly, the jury's inquiry indicated they were confused. However, in the context of the full form and all instructions given to the jury, we can infer what likely confused them. *State v. Brown*, 132 Wn.2d 529, 605, 940 P.2d 546 (1997) ("Jury instructions are to be read as a whole and each instruction is read in the context of all others given.").

In question 8, the verdict form asked, "What do you find to be the amount of damages that the Plaintiff could have avoided or minimized had she exercised ordinary care?" CP at 484. While the question meant to apply only to unmitigated damages (pursuant to question 7, which introduced mitigation), the issue of "ordinary care" had arisen both in question 7 and—by implication—in question 4, which had dealt with contributory negligence. While question 4 did not use the phrase "ordinary care," and instead used the word "negligent," jury instruction 4 defined "negligence" as "the failure to exercise ordinary care." CP at 492.

For this reason, the jury when reading question 8 could reasonably have concluded that the question addressed *all* damages stemming from Ms. Smith's failure to exercise ordinary care, in which case the jury would have needed to carry forward the proportional amount of damages it had assigned to Ms. Smith in question 6, and add that amount to the damages she had failed to mitigate. Ms. Smith correctly argues that, had the jury done this, it would have resulted in a double deduction of Ms. Smith's contributory negligence fault.

However, no double deduction occurred because the trial court, in its reply to the jury, adequately dispelled the relevant confusion. First, the court made clear that the jury did not need to do anything with the fault proportions it had assigned under question 6, as adjusting damages based on fault was the court's responsibility. Second, the court made

9

clear that the jury's answers to questions 7 and 8 should be wholly distinct from their answers to questions 4-6. This was a correct statement. The verdict form had charged the jury with assigning fault under contributory negligence, and then had charged them separately with assigning fault under failure to mitigate. The court would then use both answers to reduce Ms. Smith's recovery.

Regardless, we know that no double deduction occurred in this case because the jury, under question 8, imposed no deduction at all.

IV.     MOTION FOR NEW TRIAL OR INCREASED AWARD

In a three-sentence contention, Smith argues the trial court should have granted her motion for a new trial or increased award because no reasonable or unconfused jury could have found her 90 percent at fault. We disagree.

Smith had chronic back pain, and, in the year before the incident, had injured her back simply by reaching into a minifridge. The van driver did not need Smith's help to right Roller in his wheelchair. Roller was uninjured and calm by the time Smith decided to assist the driver. Smith knew that helping the driver would cause her pain, and a rational jury could have found that Smith knew she would injure herself by helping the driver lift a 250- to 270-pound man in his motorized wheel chair.

Moreover, juries often render compromise verdicts. In closing, the parties debated to what extent, if any, Smith's lower back pain was attributable to the incident and the

No. 39744-1-III
*Smith v. STA·*

reasonableness of Smith's decision to assist the driver. A range of possibilities was presented to the jury. The jury may have agreed to enter a higher damage award than some of the jurors preferred, and a higher contributory fault percentage than other jurors preferred, simply to reach an award they all could agree was just.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____    _____
Fearing, J.                                 Cooney, J.